**Martin Judson SMITH, Jr. and John Thomas Lott, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 24144.**

United States Court of Appeals Fifth Circuit.

Nov. 8, 1967.

William B. Mobley, Jr., Corpus Christi, Tex., Clyde W. Woody, Marian S. Rosen, Houston, Tex., for appellants.

James R. Gough, Douglas M. Smith, Asst. U. S. Attys., Houston, Tex., for appellee.

Before HUTCHESON, BELL and COLEMAN, Circuit Judges.

HUTCHESON, Circuit Judge.

Martin Smith and John Lott appeal from their convictions on charges of con-cealing and transporting illegally import-ed narcotics [1] and purchasing narcotics from other than the original stamped package.[2] Here, as at the trial, each is separately represented by appointed coun-sel. Of the many errors claimed, we deal with only the significant, and affirm.

*A. Motion to Suppress.* Appellants moved to suppress the use as evidence of heroin which was taken from them pur-suant to what they claim was an unrea-sonable search. Rule 41(e), F.R.Crim.P. The motions were denied by the District Court, and both appellants claim error. The government attempts justification of the warrantless search on the ground that it either was a border search or was based on probable cause. A recitation of the facts is necessary.

Appellant Lott was known to the Cus-toms Officers at Falcon Dam, Texas. He had twice registered at the border as a previously convicted narcotics offender, and the officers had information from the Ft. Worth police that Lott was a dealer in narcotics. It had been learned from an informer [3] that Lott often con-sorted when in Mexico with one Martinez, a narcotics supplier. At 3:30 P.M. on March 21, 1966, the Falcon Dam Customs Office was notified that Lott had regis-tered at the nearby Roma, Texas, border crossing and entered Mexico. Shortly thereafter, a Mexican informer told the officers that a man named Johnny was at the residence of Martinez. No other in-formation was received; Lott was not identified nor was he known to have pur-chased heroin.

Lott re-entered the United States with-out search or detainment. He was, how-ever, placed under surveillance by three customs officers. In Roma, Lott met ap-pellant Smith, and together they drove in a Ford pickup to McAllen, where they rented a hotel room. During the next few hours, they left the room on four occasions to visit the bus depot, apparent-ly observing the arrival of busses from

---

1. 21 U.S.C. Sec. 174.

2. 26 U.S.C. Sec. 4704(a).

3. The informer was known to be reliable in that he had previously furnished in-formation which resulted in arrests.

Mexico. Shortly after midnight, Smith boarded a Dallas-bound bus and Lott followed in the pickup. When the bus reached a border check-point at Falfurrias,[4] a border patrolman requested identification from the passengers, but no search was instituted.[5] Lott in the pickup was also stopped but not searched. At the checkpoint, the driver of the bus informed the officers that Smith had purchased a ticket to George West, Texas, and had asked the driver how he might recognize the town when they arrived. In George West, Smith left the bus and joined Lott. They drove together to Three Rivers, where they were stopped by the surveilling officers. As appellants debarked the truck, Smith dropped a package which was examined at the time and found to contain heroin.

■ We do not reach the border search justification urged by the government,[6] for it is apparent that the warrantless search was based on probable cause. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The officers knew that Lott was a narcotics dealer and a prior offender. They had reliable information that while Lott was in Mexico on this occasion a man named Johnny was visiting a narcotics supplier and that Lott had been seen with the supplier on previous visits. The officers later observed Lott rendezvous with Smith in an apparently prearranged manner. They saw the two leave their McAllen motel room for visits to the bus depot, and finally depart for this strange convoy trip to George West. These post-crossing maneuvers, when coupled with Lott's reputation and his activity while in Mexico, were easily sufficient to constitute probable cause for the belief that when the vehicle was stopped it carried contraband narcotics.

■■ Lott complains also of the failure of the officers to obtain a search or arrest warrant during the five-hour surveillance of the motel room. Although the Supreme Court has attested the necessity for obtaining a warrant where possible before instituting a search,[7] several reasons for not doing so are recognized. In Carroll v. United States, supra, the court approved the warrantless search of persons or vehicles which are likely to escape detention. This was the situation here, for the goods sought were capable of being moved at any moment and the suspects themselves were transients. An additional factor is that at the time appellants were in the motel there may have been no such probable cause as would justify the issuance of a warrant. Failure to seek a warrant when none would have issued cannot in itself render unreasonable a later search. Cf. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947).

■ B. *Motions to Sever.* Both Smith and Lott claim error in the denial of their respective motions for separate trials. Rule 14, F.R.Crim.P. It is axiomatic that the granting of separate trials for co-defendants is a matter for the discretion of the trial judge. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Peterson v. United States, 344 F.2d 419 (5th Cir. 1965). Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the determination is not subject to reversal. Milam v. United States,

---

4. Falfurrias, Texas, is 175 miles north of the border.

5. One officer testified that searching busses is not profitable because contraband might be secreted which, if discovered, cannot be connected with any passenger.

6. Appellants were stopped 175 miles north of the border after 11 hours of post-crossing surveillance.

7. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947).

322 F.2d 104 (5th Cir. 1963), cert. denied, 377 U.S. 911, 84 S.Ct. 1174, 12 L.Ed.2d 181 (1964); Garcia v. United States, 315 F.2d 679 (5th Cir. 1963); Dowling v. United States, 249 F.2d 746 (5th Cir. 1958); Corcoran v. United States, 229 F.2d 295 (5th Cir. 1956).

Smith directs our attention to no specific prejudice resulting from his trial jointly with Lott.[8] Lott argues that the joint trial denied him the opportunity to call Smith as a witness for the purpose of explaining his possession. An intention of the movant to have his codefendant testify has never been considered ground for severance.[9] This is especially true where, as here, any prejudice resulting from the joint trial is merely speculative. Lott has neither shown nor asserted that (1) Smith's version of the facts would have any exculpatory effect,[10] or that (2) Smith would more likely testify were he tried separately.[11] We do not conjecture abuses of discretion.[12]

*C. The Statutory Presumption and Evidence of Possession.* Violation of the statutory provisions under which appellants were convicted is prima facie established by possession of narcotics.[13] Only Smith was shown to be in actual possession of the confiscated heroin, and Lott contends that the evidence was insufficient to establish his possession and to raise the statutory presumption.

"Possession" within the meaning of the statute may be either actual or constructive, constructive possession being dominion and control over the illegal drug.[14] Such possession need not be exclusive, but may be shared with others,[15] and is susceptible of proof by

8. Although Lott's counsel mentioned in jury argument that only Smith had actual possession of the heroin, this would have been apparent were Smith tried alone. Lott's prior narcotics convictions which Smith feared would prejudice him "simply by virtue of his association", were never revealed to the jury. All other allegations of prejudice to Smith are hypothetical only.

9. See Kolod v. United States, 371 F.2d 983 (10th Cir. 1967); Gorin v. United States, 313 F.2d 641 (1st Cir. 1963); Olmstead v. United States, 19 F.2d 842 (9th Cir. 1927); aff'd, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); United States v. Leighton, 265 F.Supp. 27 (S.D.N.Y.1967); United States v. Van Allen, 28 F.R.D. 329 (S.D.N.Y.1961); United States v. Berman, 24 F.R.D. 26 (S.D.N.Y.1959).

10. See United States v. Echeles, 352 F.2d 892 (7th Cir. 1965).

11. See Kolod v. United States, 371 F.2d 983 (10th Cir. 1967); United States v. Sanders, 266 F.Supp. 615 (W.D.La. 1967); United States v. Gleason, 259 F. Supp. 282 (S.D.N.Y.1966).

12. De Luna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5th Cir. 1962), is no obstacle. We did not there hold that severance would be demanded by an intention to call a co-defendant who would likely invoke the Fifth Amendment. The holding was directed to the effect of such a situation on the recalcitrant defendant when his silence was commented upon in argument. Lott also cites Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), as somehow supportive of his demand for severance. That case is in no way apposite, dealing as it does with the right of criminal defendants to compulsory process of witnesses. Lott was not denied such process merely because the witness he called chose not to testify.

13. "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C. Sec. 174. " * * * the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found." 26 U.S.C. Sec. 4704(a).

14. Quiles v. United States, 344 F.2d 490 (9th Cir. 1965); McClure v. United States, 332 F.2d 19 (9th Cir.), cert. denied, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1964); Anthony v. United States, 331 F.2d 687 (9th Cir. 1964); Mack v. United States, 326 F.2d 481 (8th Cir. 1964).

15. Brown v. United States, 222 F.2d 293 (9th Cir. 1955).

circumstantial as well as direct evidence.[16] Lott's activity leading to the discovery of heroin easily justified a finding of his possession under these principles.

[14, 15] Lott also complains that the trial court erred in framing its instruction so that even though Lott did not possess the heroin, a finding that he aided and abetted or conspired in its acquisition would warrant an imputation of possession as a principal to the crime and give rise to the statutory presumption of violation. Although Lott is correct in urging that possession imputed by the fact of conspiracy alone should not activate the presumption of guilt,[17] it does not appear from a reading of the charge that any such imputation could be understood. It was not mentioned that the acts of one principal are attributable to another.

*D. Interrogation of Jurors.* The only other point worthy of discussion is Smith's contention that the trial court erred in failing to inquire of the jury whether they had seen an article which appeared in the local newspaper on the day of deliberation. The article related that Smith had, upon being called as a witness by Lott, refused to testify, claiming his Fifth Amendment privilege. This occurred outside the presence of the jury, and the court instructed Lott that no further mention of the incident was to be made. Smith moved for mistrial and for inquiry whether any juror had read the article.

The Court of Appeals for the Tenth Circuit has recently held that the failure to interrogate jurors regarding their exposure to an article which reported a withdrawn guilty plea and an excluded confession was error. Mares v. United States, 383 F.2d 805 (10th Cir. 1967).[18] But there, as the court said,

[w]e have an extreme situation, the reporting during the trial of a withdrawn guilty plea and an excluded confession. If any juror even saw the headline and connected it with the trial in progress, the possibility that it would not prejudice that juror is so slight that it merits no consideration.

The trial judge has a significant measure of discretion in dealing with news articles concerning the trial, and "each case must turn on its special facts." Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). The situation before us is not "extreme". The article reported little more than the jury already knew—that Smith had not testified. Unlike an excluded confession, this was in no way probative of guilt. Moreover, we assume that any possible prejudice was corrected by the court's standard admonition to disregard publicity and the failure of a defendant to testify. In this situation, refusing the interrogation was not error.

Other specifications of error approach the frivolous. Those relating to requested questions of the venire and instructions for the jury demonstrate no abuse of discretion. See Bellard v. United States, 356 F.2d 437, 439 (5th Cir. 1966); Wright v. United States, 175 F.2d 384 (8th Cir.), cert. denied, 338 U.S. 873, 70 S.Ct. 143, 94 L.Ed. 535 (1949). Jury activity discovered by Smith's post-verdict inquisition was not

16. Knapp v. United States, 311 F.2d 71 (5th Cir. 1962); Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961). But mere presence in the area of the narcotic or awareness of its location is not sufficient to establish possession. Bass v. United States, 326 F.2d 884 (8th Cir. 1964), cert. denied, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962).

17. United States v. Jones, 308 F.2d 26 (2nd Cir. 1962); Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962). See Sandler, The Statutory Presumption in Federal Narcotics Prosecutions, 57 J. Crim.Law 7, 15–16 (1966).

18. See also Adjmi v. United States, 346 F.2d 654 (5th Cir. 1965), cert. denied, 382 U.S. 823, 86 S.Ct. 54, 15 L.Ed.2d 69; Marson v. United States, 203 F.2d 904 (6th Cir. 1953).

misconduct. The evidence was sufficient as to appellant Smith. Among the many points of error, we find none calling for reversal, and accordingly the judgment is

Affirmed.