UNITED STATES of America,
Plaintiff-Appellee,

v.

Obadiah STEPHENSON, Defendant-
Appellant.

No. 72–2400.

United States Court of Appeals,
Fifth Circuit.

March 19, 1973.

Jack C. Ciolino, New Orleans, La. (Court-Appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Harry Hull, Jr., Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Stephenson was named as the sole defendant in a three-count indictment for possession of heroin. The first count charged him with possession of approximately 25 grams of heroin contained in 233 glassine envelopes in violation of 21 U.S.C.A. § 174. Counts two and three charged him with the possession of the same quantity of heroin in violation of 26 U.S.C.A. §§ 4704(a) and 4724(c) respectively. Stephenson was tried by a jury and convicted on all counts. He received three consecutive sentences of five-years imprisonment. We reverse.

Stephenson's principal contention on appeal is that it was error for the district court to deny his motion for a judgment of acquittal at the close of the Government's case. We agree with Stephenson that, as a matter of law, there was insufficient evidence of his guilt to submit the case to the jury.

On January 27, 1971, Special Agent Fenger of the Bureau of Narcotics and Dangerous Drugs (BNDD) obtained a warrant to search Stephenson's person and his 1970 Buick Riviera for narcotics. Another warrant was obtained to New Orleans. About 9 p. m. on the search Big Mary's Number 3 Bar in night of the 27th, Fenger and several other BNDD agents observed Stephenson arrive and park his Buick Riviera across the street from Big Mary's. After approaching the vehicle, the agents informed Stephenson that they had a warrant to search him and his car. Stephenson stepped out of his automobile, and Fenger conducted the search. No narcotics were found.

Fenger than asked Stephenson to accompany him into Big Mary's. They proceeded into the bar, and Fenger advised the barmaid that he had a warrant to search the bar and all adjoining rooms. Stephenson sat at the bar with Fenger while the other agents conducted the search. During this search, the 233 glassine envelopes of heroin were found in a locked storage room in the rear of the bar. The room had been used as sleeping quarters for one Felix Ballazar. Ballazar's clothes and suitcases were in the room, and the envelopes of heroin were found under the mattress of his bed on which he was sitting when the agents entered. Also discovered during the search in a separate locked storeroom were three cartons of cellophane envelopes similar to the ones containing the heroin.

The only evidence of any link between Stephenson and the heroin was latent fingerprints of his found on seventeen of the envelopes. Moreover, unlike Stoppelli v. United States, 9 Cir. 1950, 183 F.2d 391, which is so heavily relied upon by the Government, no evidence was ever offered in the case *sub judice* that Stephenson's fingerprints were placed on these envelopes when they contained heroin. On the contrary, the F.B.I. fingerprint expert testified that the prints could have been placed on the glassine envelopes as long as a year before the seizure when the envelopes were empty. Because glassine is porous, any sweat or grease on the fingertips is absorbed into the material so that the resulting print is almost permanent; it cannot be removed by wiping. Additionally, if a person handling glassine does not have any moisture on his fingertips he will not leave a fingerprint. Finally, since fingerprints on glassine depend on the presence of sweat or moisture on the fingertips, it is possible for a person to handle many glassine envelopes and

leave fingerprints on only a few, because the sweat on the friction ridges of the fingers would be absorbed by the first glassine envelopes touched.

■■ We recognize that proof of actual possession is not necessary to sustain a conviction for violation of the statutes involved; constructive possession is sufficient. Such possession need not be exclusive, but may be shared with others. Moreover, it may be proven by circumstantial as well as by direct evidence. Garza v. United States, 5 Cir. 1967, 385 F.2d 899, 901; Smith v. United States, 5 Cir. 1967, 385 F.2d 34, 38–39. However, whatever the nature of the evidence, it must be such that a jury may reasonably infer that the person charged with constructive possession had dominion and control over the drug. United States v. Mendoza, 5 Cir. 1970, 433 F.2d 891, 896. By the same token, mere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession. United States v. Davis, 3 Cir. 1972, 461 F.2d 1026, 1035, 1036; United States v. Holland, 1971, 144 U.S.App.D.C. 225, 445 F.2d 701, 703; Smith v. United States, 5 Cir. 1967, 385 F.2d 34, 39 n. 16.

In this case no connection between Stephenson and Ballazar was ever proven. Indeed, the Government offered no evidence whatsoever to establish any kind of relationship between the two of them, much less a working relationship. Moreover, although Stephenson was known to frequent Big Mary's, as he lived in the area at one time, he had no proprietary interest in the bar. Nor did he have any keys to the bar or to either of the locked storage rooms where the heroin and envelopes were found.

■■ In circumstantial evidence cases, the test of the sufficiency of proof on a motion for judgment of acquittal, and on review of the denial of such a motion, is whether, taking the evidence most favorable to the Government, Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 825; United States v. Andrews, 5 Cir. 1970, 427 F.2d 539, 540; Surrett v. United States, 5 Cir. 1970, 421 F.2d 403, 405. If the evidence is such that a reasonable person may have a reasonable doubt as to the defendant's guilt, the case should be submitted to the jury. On the other hand, a trial judge should not permit a case to go to the jury if the evidence is so scant as to allow the jury merely to speculate or to conjecture as to the defendant's guilt. In other words, a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged. *See* United States v. Bethea, D.C.Cir. 1970, 442 F.2d 790, 792. Considering all of the circumstances, we think that the bare presence of Stephenson's fingerprints on seventeen of the glassine envelopes was not, without more, sufficient evidence of guilt to have submitted the case to the jury.

■■ Where, as here, we reverse on the insufficiency of the evidence we may remand for a determination by the district court whether in light of any new evidence which the Government might bring forward a retrial is warranted—*e. g.*, Watkins v. United States, 5 Cir. 1969, 409 F.2d 1382; Brock v. United States, 5 Cir. 1967, 387 F.2d 254—but under the circumstances presented by this record we feel that "no good purpose could be served in ordering a new trial" in this case. South v. United States, 5 Cir. 1969, 412 F.2d 697; Nagell v. United States, 5 Cir. 1968, 392 F.2d 934; Argent v. United States, 5 Cir. 1963, 325 F.2d 162. The judgment of conviction is reversed, and the cause is remanded to the district court with directions to vacate the judgment and to

enter an order granting the motion of acquittal and a judgment acquitting Stephenson.

Reversed and remanded with directions.