577 F.2d 923
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey Guy LONSDALE, Defendant-Appellant.
 No. 77-5540.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 1, 1978.
 
 Samuel W. Bearman (Court Appointed), Pensacola, Fla., for defendant-appellant.
 Emory O. Williams, Jr., Asst. U. S. Atty., Nickolas P. Geeker, U. S. Atty., Pensacola, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before COWEN*, U. S. Court of Claims; GOLDBERG and AINSWORTH, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 Appellant Lonsdale was charged with unlawfully uttering a United States Treasury check in violation of 18 U.S.C. § 495.[1] He was convicted by a jury and sentenced to two years imprisonment. Lonsdale's only contention of appeal is that the district court erred in denying his motion for a judgment of acquittal at the close of the evidence. We agree with Lonsdale that there was insufficient evidence of his guilt to submit the case to the jury. Appellant's conviction must therefore be reversed.
 
 I.
 
 2
 On February 28, 1974, a United States Treasury check in the amount of $207.00 was issued to Gary F. Malunao as his salary for service with the United States Navy. On March 6, 1974, the check was cashed at the West Pensacola Bank, located on the Navy base at which both Malunao and Lonsdale were stationed. The check was endorsed with the names "Gary F. Malunao" and "Jeffrey G. Lonsdeale",[2] and Lonsdale's Social Security number appeared after the "Lonsdeale" endorsement. Appellant's thumbprint was found on the check. Three years after the check was cashed, Lonsdale was arrested and charged with uttering a stolen check. He was tried and convicted on August 1, 1977.
 
 
 3
 The government's evidence at trial was entirely circumstantial. First, Malunao testified that he had neither signed nor negotiated the check. Second, the government introduced evidence of Lonsdale's conduct subsequent to an interview between Lonsdale and a bank officer concerning the endorsement. During the interview Lonsdale was alerted to the fact that his name appeared on the check and that he was under suspicion, and shortly thereafter Lonsdale reported to Navy authorities that his military identification card was missing. A government handwriting expert also testified at trial. On direct examination he stated that the second endorsement may have been "written in a distorted fashion." He admitted on cross-examination, however, that there were "actually no similarities of any consequence" between appellant Lonsdale's handwriting and the "Jeffrey G. Lonsdeale" endorsement on the check. Finally, a fingerprint expert testified that defendant Lonsdale's left thumb print matched a latent print lifted from the back of the check.
 
 
 4
 This was all the evidence introduced against Lonsdale. Significantly the bank teller who accepted the stolen check could not identify appellant as the person who cashed it. Lonsdale took the witness stand and denied having cashed the check.
 
 II.
 
 5
 In evaluating the sufficiency of this evidence to support the conviction, we must, of course, view the evidence in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Rojas, 537 F.2d 216, 220 (5th Cir. 1976), cert. denied, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). The test of the sufficiency of proof on a motion for judgment of acquittal, and on review of the denial of such a motion, is whether the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. United States v. Stephenson, 474 F.2d 1353, 1355 (5th Cir. 1973). See United States v. Rojas, supra, 537 F.2d at 220. A trial judge should not permit a case to go to the jury if the evidence is so scant that the jury could only speculate or conjecture as to the defendant's guilt, and "a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." United States v. Stephenson, supra, 474 F.2d at 1355 (emphasis in original). See United States v. Haggins, 545 F.2d 1009, 1012 (5th Cir. 1977); United States v. Barrera, 547 F.2d 1250, 1255 (5th Cir. 1977).
 
 III.
 
 6
 This case summons us to apply the principle that the government must prove a defendant guilty beyond a reasonable doubt. In most instances the jury conscientiously discharges its duty of judging the guilt or innocence of the accused. The parade of convicted defendants who pass ceaselessly before this court and whose convictions are justifiably affirmed bears tribute to the judgment of citizens who serve on juries. We are ever mindful of the leavening influence of juries and of their concomitant compassion. But while we salute the wisdom of placing the jury at the heart of our criminal justice system, we must not forget the importance of our own role in that system as a reviewing court or becomes callous in our application of the fundamental principle that the government must prove a defendant guilty beyond a reasonable doubt.
 
 
 7
 Evaluating the evidence proffered by the government in this case with these principles and standards in mind, we are convinced that appellant's conviction must be reversed We are unable to accord much weight to the presence of appellant's name on the back of the check. It is, of course, clear that someone endorsed the check with Lonsdale's name. The government apparently argues, however, that the jury was entitled to conclude from an examination of the check that Lonsdale signed the endorsement. Insofar as handwriting analysis might bear on that question, the government's evidence was weak indeed. The government's own expert testified that "there are actually no similarities of any consequence" between the "Jeffrey G. Lonsdeale" endorsement and appellant's handwriting. The government emphasizes the expert's testimony that the endorsement may have been written in a distorted fashion. This testimony, however, proves only that whoever forged the signatures may have tried to disguise his writing. The necessary connection between the handwriting of this person and that of appellant is nowhere supplied by the evidence.[3]
 
 
 8
 The fact that Lonsdale reported his identification card as missing only after he was questioned concerning the forged check likewise fails to prove any fact crucial to the prosecution's case. Appellant testified that he had noticed the card was not in his wallet only a week before he was questioned by bank representatives and did not look for the card until after the questioning because he was sure that it was merely misplaced. He further testified that he did not need the card until the next pay day. Assuming, as we must, that the jury disbelieved this story, the most that could be inferred from the testimony concerning the identification card is that Lonsdale had the card in his possession for the entire period. This might well be crucial were there evidence that Lonsdale's identification card was used by the person who cashed the check.[4] Here, however, the government introduced no testimony that the card was actually used for this purpose. Since many individuals on the base would have had access to Lonsdale's social security number, the conclusion that Lonsdale had the card in his possession is of only slight significance on the ultimate question of guilt.
 
 
 9
 The only truly damning evidence introduced by the government was, therefore, Lonsdale's fingerprint on the check. The check was issued to Malunao on February 28, 1974 and cashed on March 6. The record is silent concerning the location of the check at any point in time between these two dates. No circumstantial evidence was introduced tending to show that Lonsdale's fingerprint must have been left on the check during the course of uttering it.[5] Yet the government bears the burden of proving that Lonsdale uttered the check, not that he touched it. There are a potential multitude of manual manipulations involving the check which would explain the presence of defendant's fingerprints. Lonsdale's having touched the check is highly probative of his having uttered it only to the extent that the government is able to demonstrate that Lonsdale could not reasonably have handled it at any time other than in the course of committing the charged offense.
 
 
 10
 The D.C. Circuit has had occasion in Borum v. United States, 127 U.S.App.D.C. 48, 380 F.2d 595 (1967), to address the sufficiency of fingerprint evidence on a motion for acquittal in similar circumstances. In that case valuable coins stored in glass jars were stolen from the complainant's home. Four of Borum's fingerprints were subsequently found on two of the empty jars left in the house. Further evidence placed Borum within a mile and half of the house two hours before the theft. The Borum court concluded that where the only link between the defendant and the crime is fingerprint evidence, the government must produce some further evidence which could support an inference that the fingerprints were left during the commission of the crime. In reversing Borum's conviction for insufficient evidence, the court noted that to
 
 
 11
 allow this conviction to stand would be to hold that anyone who touches anything which is found later at the scene of a crime may be convicted, provided he is within a mile and a half of the scene when the crime may have been committed.
 
 
 12
 127 U.S.App.D.C. at 50, 380 F.2d at 597. See also Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966).
 
 
 13
 Appellant maintains that this court has already adopted the Borum approach, citing United States v. Durham, 512 F.2d 1281 (5th Cir.), cert. denied, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975), and United States v. Griffin, 483 F.2d 957 (5th Cir. 1973). We need not engage in post hoc characterization of those cases. In both instances, the court sustained convictions where the government had introduced fingerprint evidence at trial. We distinguished Borum on the basis that the fingerprint evidence was only a small part of the relevant evidence. 512 F.2d at 1289; 483 F.2d at 958-59.[6] A more closely related Fifth Circuit case is United States v. Stephenson, 474 F.2d 1353 (5th Cir. 1973), in which we reversed a conviction for possession of heroin based largely on fingerprint evidence. Although Borum was not cited in the Stephenson opinion, our reasoning was similar to that of the D.C. Circuit. In Stephenson the government lawfully seized 233 glassine envelopes of heroin secreted in the storage room of a bar. The defendant was known to frequent the bar and his latent fingerprints were found on seventeen of the envelopes. We reversed the conviction because "no evidence was ever offered . . . that Stephenson's fingerprints were placed on these envelopes when they contained heroin." 474 F.2d at 1354. Under the circumstances, the fingerprint evidence plus the testimony concerning defendant's association with the bar were insufficient as a matter of law to sustain the conviction. Id. at 1354-55.
 
 
 14
 As we have already seen, here there is no evidence, either direct or circumstantial, which indicates that Lonsdale handled the check in the course of committing the charged offense. His fingerprint could have been placed on the check at any time during the seven days prior to the uttering offense on March 6. The government introduced no evidence concerning the location of the check during that period.
 
 
 15
 As in Borum, the jury may have thought that Lonsdale could not have touched the check except during the commission of the crime. The jury may have thought that Lonsdale never would have had an opportunity to touch the check if he had not been the one who cashed it on March 6, 1974. But even giving appropriate weight to the other evidence discussed above, that conclusion would have been based on speculation alone. While the government need not negate all hypotheses explaining the fingerprint in a manner consistent with innocence, here it negated none of them. And given the apportionment of the burden of proof in our system of criminal justice, Lonsdale was under no obligation to explain the existence of the prints.[7] Borum v. United States, supra, 380 F.2d at 597 n. 11.
 
 
 16
 Considering the fingerprint evidence in conjunction with the testimony concerning Lonsdale's identification card and the other evidence discussed above, we are compelled to conclude that the evidence against Lonsdale was so inconclusive that a reasonable jury must have a reasonable doubt about Lonsdale's guilt. The district court erred in denying appellant's motion for a judgment of acquittal at the close of the evidence, and appellant's conviction is therefore reversed. The Supreme Court in Burks v. United States, --- U.S. ----, 98 S.Ct. 2141, 56 L.Ed.2d --- (1978), recently held that the double jeopardy clause precludes a second trial where a reviewing court has found the evidence legally insufficient to sustain the conviction. We therefore remand the cause to the district court with instructions to vacate the judgment and to enter both an order granting the motion of acquittal and a judgment acquitting appellant Lonsdale.
 
 
 17
 REVERSED and REMANDED.
 
 
 
 *
 Senior Judge of U. S. Court of Claims, sitting by designation
 
 
 [1]
 In order to make out the substantive offense of "uttering" a forged Treasurer's check under 18 U.S.C. § 495, the government must prove that the defendant attempted to circulate such a check by means of a fraudulent representation that it was genuine. See United States v. Watts, 532 F.2d 1215, 1218 n. 2 (8th Cir.), cert. denied, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976); United States v. Brown, 495 F.2d 593, 597 n. 4 (1st Cir.), cert. denied, 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974)
 
 
 [2]
 Appellant spells his name "Lonsdale;" the endorsement on the check was spelled "Lonsdeale."
 
 
 [3]
 Appellant argues in this regard that the misspelling of his name on the endorsement supports his contention that someone else signed his name and uttered the check. According to Lonsdale, no one would misspell his own name by mistake. Nor would the actual criminal misspell his name intentionally, because it might attract attention when the check was cashed. The jury, however, could reasonably have drawn the opposite inference that an endorser of a stolen check might purposely misspell his name in order to claim later that he would not have uttered the check with his name misspelled. We thus do not rely on appellant's argument on this matter
 
 
 [4]
 If the jury disbelieved Lonsdale's testimony that he had lost his ID card, it would be entitled to draw the inference that the card was in Lonsdale's possession at the time the check was cashed. See e. g., United States v. Martinez, 514 F.2d 334, 341 (9th Cir. 1975); Johnson v. United States, 138 U.S.App.D.C. 174, 178-79, 426 F.2d 651, 655-56 (1970) (en banc), cert. denied, 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971). Thus credible evidence that Lonsdale's identification card was used by the person who cashed the check would be accorded great weight in evaluating the sufficiency of the evidence on the ultimate question of whether Lonsdale actually uttered the stolen check. Here, however, there is no testimony to indicate that Lonsdale's military ID was used by the person who cashed the check
 
 
 [5]
 There was no testimony by Malunao, for example, that anyone other than he touched the check until the date it was lost or stolen. While such testimony would not demonstrate that Lonsdale touched the check while uttering it, the evidence would preclude the possibility that he touched the check before it left Malunao's possession. Even this possibility is not negated by the record here. Indeed, Malunao himself testified that the men in his barracks often went into each other's rooms to talk or listen to records, and Lonsdale could have touched the check on such a visit. Other possible scenarios suggest themselves. For example, Lonsdale could have been deceived into touching the check by some other individual who then committed the uttering crime
 
 
 [6]
 Neither Borum nor any of our prior decisions suggests that fingerprint evidence is irrelevant; the issue is whether fingerprint evidence is sufficient to sustain a conviction where there is no evidence concerning when the fingerprint was implanted or other significant evidence connecting the accused to the crime
 
 
 [7]
 Lonsdale did testify that his fingerprint might have been placed on the check when a bank representative, Mrs. Baskin, questioned him about the check after the forgery was discovered. This explanation was refuted by Baskin's testimony that she never had possession of the original check and instead had shown Lonsdale a photostatic copy. The government argues that Lonsdale's testimony on this point somehow constitutes evidence of guilt. We cannot agree. Even though, in light of Baskin's testimony, Lonsdale's explanation does not explain the presence of his print on the check, the jury's rejection of this explanation is probative neither of Lonsdale's truthfulness in general nor of the possibility that he innocently touched the check on another occasion. Put another way, Lonsdale's explanation was not of such a character that its rejection could reasonably preclude belief in any reasonable theory of innocent contact with the check