UNITED STATES of America,
Plaintiff-Appellee,

v.

Ramon Vasquez MORENO,
Defendant-Appellant.

No. 80–1280.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 30, 1981.

Phil Harris, Weslaco, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, THORNBERRY and JERRE S. WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Ramon Vasquez Moreno, appellant, was convicted by a jury of possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (1976), and of conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1976). Appellant now appeals these convictions on two grounds: (1) the alleged insufficiency of the evidence on the possession count; and (2) the error allegedly committed by the district court in admitting into evidence certain references to the past marijuana dealings of appellant's brothers. Since we find that the evidence was sufficient to sustain appellant's conviction on the possession count, and that the district court did not abuse its discretion on the evidentiary point, we affirm.

## I. Facts

Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the facts are as follows.

Appellant operated Moreno's Gulf Service Station in Los Fresnos, Texas, located in the Rio Grande Valley of Texas. According to the uncorroborated testimony of Johnny Lee Guidry, an unindicted co-conspirator, appellant, while at his service station on August 16, 1977, told Guidry to load 1,936 pounds of marijuana which was owned by appellant's brother, Carlos Moreno. The marijuana, contained in burlap sacks, and the tractor-trailer, upon which the marijuana was to be loaded, were concealed in a shed located about 20 miles away in Las Llesgas, Texas. Carlos Moreno also owned the tractor-trailer. Surprisingly, the record does not reflect the ownership of the shed.

Guidry, Juan Vasquez, and a third, unidentified person drove to the shed and loaded the sacks containing the marijuana onto the trailer, covering the sacks with grain and the trailer itself with a tarpaulin. Upon completing these tasks, the three men returned to appellant's service station and informed appellant that the trailer had been loaded. Guidry and the other two men were to be paid $200.00 each by either Carlos or Ramon Moreno for their work. Payment was to be made after the marijuana had reached its destination of Austin, Texas, and payment therefor had been received.[1]

When the day turned to night, Guidry, Juan Vasquez, Julian Henry Garza, Paulino Pena, and Vicente Arredondo went to the shed and connected the trailer to the tractor. Then, Arredondo, driving the marijuana-ladened tractor-trailer, and Pena and Garza, following in an automobile, left the shed for Austin. The latter two men were supposed to call Ramon Moreno, appellant here, to report whether the tractor-trailer had gotten through the border patrol checkpoint in Sarita, Texas, located between Las Llesgas and Austin. After the tractor-trailer departed, Guidry and Vasquez returned to appellant's service station. Pena and Garza eventually called the service sta-

---

1. None of these men received payment for his services because the marijuana never reached its destination.

312

tion, informing everyone that the border patrol agents at the border patrol checkpoint had discovered the marijuana. The next morning, appellant, his brother Carlos, Guidry, Pena, Garza, and two or three other people met at appellant's service station and discussed the preceding night's events.

Appellant, along with three other codefendants,[2] was indicted for conspiracy to possess marijuana with intent to distribute it, and for possession of marijuana with intent to distribute it. Appellant was convicted on both counts. He does not challenge the sufficiency of the evidence on the conspiracy count. He does, however, challenge the sufficiency of the evidence on the possession count. He further contends that both of his convictions should be reversed on the ground that the district court committed reversible error in permitting the government to elicit on its redirect examination of Guidry references to the past marijuana dealings of appellant's brothers. We address each contention separately.

## II. Sufficiency of the Evidence

Appellant contends that the evidence was insufficient to support his conviction for the substantive offense of possession of marijuana with intent to distribute it. He argues that there was insufficient evidence to show that he "possessed" the marijuana, and claims that he instead was a mere messenger who simply conveyed an instruction from his brother Carlos to Guidry. Appellant notes that the only testimony relating to him was that of Guidry, whose testimony was given as part of a plea bargaining agreement in connection with a previous conviction for possession of cocaine.

■ The standard of review in a criminal case when the issue is the sufficiency of the evidence is whether the jury could have reasonably found that the evidence was inconsistent with every reasonable hypothesis of innocence. *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *United States v. Witt*, 618 F.2d 283, 284 (5th Cir. 1980), *cert. de-*

*nied*, —— U.S. ——, 101 S.Ct. 234, 66 L.Ed.2d 107 (1980). In applying this standard, we must consider the evidence and all reasonable inferences therefrom in a light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Thompson*, 603 F.2d 1200, 1204 (5th Cir. 1979).

■ We note at the outset that the absence of corroboration of Guidry's testimony regarding appellant does not by itself bar conviction. Generally, a conviction may be based solely upon the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face. *United States v. Garner*, 581 F.2d 481, 486, n. 2 (5th Cir. 1978); *United States v. Kelley*, 559 F.2d 399, 400 (5th Cir. 1977), *cert. denied*, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 497 (1977).

■ It is well settled that possession of a controlled substance with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1976), may be either actual or constructive. *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979); *United States v. Felts*, 497 F.2d 80, 82 (5th Cir. 1974), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974).

■ As with actual possession, constructive possession may be exclusive or joint, *United States v. Martinez*, 588 F.2d at 498, and is susceptible of proof by circumstantial as well as direct evidence. *United States v. Maspero*, 496 F.2d 1354 (5th Cir. 1974). Constructive possession may be shown by "ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." *United States v. Martinez*, 588 F.2d at 498, quoting *United States v. Salinas-Salinas*, 555 F.2d 470, 473 (5th Cir. 1977). "[M]ere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession." *United*

2. Julian Henry Garza, Juan Vasquez, and Paulino Pena.

*States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973) (citations omitted).

Since there is no evidence that appellant was ever in actual, physical possession of the marijuana, his conviction for possession may stand only if the evidence establishes constructive possession. Having carefully reviewed the record, we find that the evidence is sufficient to establish that appellant had dominion or control over the marijuana throughout the transaction. While at his service station, appellant instructed Guidry to go to the shed and load the marijuana into the tractor-trailer. Either appellant or his brother Carlos was to pay Guidry and the other men who participated in the operation for their work in loading and delivering the marijuana. After the men loaded the marijuana, they immediately returned to appellant's service station and informed appellant that the loading had been performed. When the tractor-trailer departed for its intended destination, the participants who remained in Los Fresnos congregated at appellant's service station that night. Further, it was appellant who was to receive the telephone call from Pena and Garza informing everyone whether the tractor-trailer managed to get past the border patrol station without the marijuana being discovered.[3] Finally, appellant's service station was the location at which the participants in this distribution scheme, including appellant, met the morning after the marijuana was discovered.

 From this evidence, the jury could have reasonably concluded beyond a reasonable doubt that, instead of being a mere "messenger," appellant was an integral part of the narcotics distribution operation and that he enjoyed a close and continuous working relationship with those, such as his brother Carlos or Guidry, who may have had actual physical possession of the marijuana. This evidence is sufficient to show that he had joint dominion or control over the drug. *See United States v. Candanoza*, 431 F.2d 421, 424–25 (5th Cir. 1970); *Cazares-Ramirez v. United States*, 406 F.2d 228, 233–34 (5th Cir. 1969), *cert. denied*, 397

U.S. 926, 90 S.Ct. 933, 25 L.Ed.2d 106 (1970); *United States v. McGruder*, 514 F.2d 1288, 1290 (5th Cir. 1975), *cert. denied*, 423 U.S. 1057, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976); *cf. United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973) (insufficient working relationship found). Not only did appellant instruct and monitor the progress of the men who had actual possession of the marijuana, but he, along with his brother Carlos, also had the authority and the responsibility to pay them for their services. Physical custody of narcotics by an employee or agent whom one dominates, or whose actions one can control, is sufficient to constitute constructive possession by the principal. *United States v. Maroy*, 248 F.2d 663 (7th Cir. 1957), *cert. denied*, 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958); *United States v. Hernandez*, 290 F.2d 86, 90 (2d Cir. 1961).

We accordingly cannot say that, as a matter of law, reasonable conclusions other than guilt could be drawn from the evidence viewed most favorably to the government. We will not disturb the jury verdict on the possession count.

### III. Admissibility of Evidence

Appellant's second contention on appeal is that the district court erred in allowing the prosecution to elicit, over objection, testimony from government witness Guidry concerning past marijuana dealings of appellant's brothers. After having carefully reviewed the context in which this testimony was given, and having considered the nature of similar testimony given earlier during the course of Guidry's testimony, we find that this contention is without merit.

During the cross-examination of Guidry by counsel for one of the codefendants in this case, counsel elicited the fact that Guidry had loaded marijuana approximately fifty times in the preceding four or so years. Defense counsel for some of the codefendants then conducted a general attack on Guidry's credibility by attempting to show a disparity between Guidry's memory of past loadings and his memory of the

---

**3.** The record does not indicate who actually received the telephone call.

transaction that is the subject of the prosecution in this case. Counsel for one codefendant asked Guidry to recount some of the specifics of his past loadings, such as the number of sacks involved in each transaction and the incidents in which he had not received payment for his services. Guidry had noticeable difficulty recalling these facts, even though he could do so with respect to the transaction at hand. Defense counsel then asked Guidry, without objection from appellant's counsel, whether it was true that Guidry could remember the names of only some of the people with whom he had worked in past marijuana transactions. He then elicited the fact that Guidry could not recall the names of every-

one with whom he had worked in the past transactions. Counsel for another codefendant continued this line of attack, eliciting the fact that the transaction involved in this case was one of only a very few transactions with respect to which Guidry could recall specific people, and the only one about which he had made specific identifications to law enforcement authorities. The purpose behind all of this cross-examination, of course, was to suggest that Guidry's unusually good memory as to the marijuana transaction involved in this case was either mistaken, fabricated by Guidry, or coached by the government.

On redirect examination,[4] government counsel asked Guidry whether the occasions

4. The relevant portion of the government's redirect examination of Guidry proceeded as follows:

BY MR. DE LUNA:

Q Now, Mr. Guidry, you were asked on cross-examination about all of these many times you have loaded marijuana before. Do you recall that?

A Yes.

Q Was that for the same Moreno family?

A Yes, it was.

MR. WEISFELD: We will object to that. There is one man here at trial and there is not the Moreno family. I am representing Ramon Moreno and that's it.

THE COURT: Well, Carlos Moreno's name has been bandied around in this case both by the defense and the prosecution, and I will overrule the objection. I assume that's what he is referring to.

MR. DE LUNA: Yes, sir.

BY MR. DE LUNA:

Q And as you were working for Mr. Moreno, at the time for Carlos Moreno, the tractor-trailers you loaded, did some of them get busted?

A This one did.

Q But at any of the other times you have been asked about, did some of the others get busted?

A I don't believe so.

Q Is that the reason—strike that.

You testified there were some people also from the Mexican side involved. Do you know a person by the name of Carlos Berrera?

A Yes, I do.

Q Who is that?

A A person that I used to get pot from, marijuana.

Q Where is he from?

A Matamoros. At least he lives there.

Q Now, when you first became involved in these marijuana deals, did you become involved with Carlos Moreno?

A Would you repeat that?

MR. WEISFELD: Your Honor, we will object to the continued examination along this line. It has nothing to do with the case....

THE COURT: Well, he has been asked on cross about various transactions and had been berated because he didn't remember some of the names, and I guess he is trying to go into those matters.

I will overrule your objection.

MR. MORENO (counsel for a codefendant): If it please the Court, with all due respect, those questions were addressed to the matter of impeachment, whether or not this witness was telling the truth. It doesn't go to the issue of what happened here on August 16 and 17 of 1977.

THE COURT: Well, defense counsel went into it. I am going to overrule the objection.

BY MR. DE LUNA:

Q Do you know Eugenio Moreno?

A Yes, I do.

Q Who is he?

A One of the brothers.

MR. WEISFELD: Your Honor, may we approach the Bench, please?

THE COURT: No, sir. I will let you approach the Bench during the recess.

BY MR. DE LUNA:

Q Did you work with him?

A Yes, I had.

Q Did you work for him at the same time you worked for Carlos Moreno?

A Yes, I have.

MR. WEISFELD: Would you note our exception to this line of questioning, Your Honor?

THE COURT: I don't mind him mentioning other names because I think he was asked on cross.

on which he had loaded marijuana in the past, as Guidry had testified he had done on cross-examination, had been for "the same Moreno family." Appellant's attorney's objection was overruled on the ground that the government was referring to Carlos Moreno, appellant's brother, whose name, according to the court, "[had] been bandied around in this case both by the defense and the prosecution...." Record, vol. 2, at 86. Government counsel responded affirmatively to the court's query whether Carlos Moreno was indeed the subject of the government's question. The government then narrowed its question to one concerning Carlos Moreno, asking whether any arrests had arisen in any of Carlos Moreno's past transactions. After asking a few questions about a Carlos Berrera from Mexico, the government then asked Guidry, over defense counsel's objection, whether he became involved with Carlos Moreno when he (Guidry) first began to engage in marijuana transactions. An ensuing discussion between defense counsel and the court on the propriety of the questioning prevented Guidry from ever answering the question. Then, over defense counsel's objection, the government elicited the fact that Guidry knew a Eugenio Moreno, that Eugenio Moreno was "[o]ne of the brothers," and that Guidry had "work[ed] for him at the same time [he had] worked for Carlos Moreno." Record, vol. 2, at 88. At this point, the court sustained appellant's attorney's objection to any further questions along this line. The court stated that the government had been permitted to ask about the names of people in past transactions, but that it was not to inquire into the specifics of any past transaction.

> MR. DE LUNA: They opened the door, Your Honor.
> THE COURT: Well, I am not going to open the door. We are going to try these defendants and nobody else, Mr. De Luna.
> MR. DE LUNA: Judge, they questioned that he couldn't remember the other people, and I am asking him if he remembers the other people.
> THE COURT: That's fine. You have asked him, but don't go into any other transactions because I have sustained the objection.

The basis of appellant's objection to Guidry's testimony apparently was that the testimony was irrelevant and that, even if relevant, its probative value was substantially outweighed by the danger of unfair prejudice that it presented. *See* Fed.R. Evid. 403.

Contrary to appellant's first assertion, Guidry's testimony connecting appellant's two brothers with past marijuana transactions in which he had engaged was relevant to the case. It was relevant to the extent that it tended to rehabilitate the credibility of Guidry's memory after it was somewhat impeached on cross-examination by the several questions of two defense counsel concerning Guidry's inability to remember most of the people with whom he had worked in past marijuana transactions.

The more difficult question, however, is whether the relevance of this testimony was substantially outweighed by the danger of unfair prejudice. "Unfair prejudice," within the meaning of Rule 403 of the Federal Rules of Evidence, means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, Advisory Committee's Note. The process of balancing the probative value of evidence against its potential prejudicial effect is within the discretion of the trial judge, whose determination is to be upheld unless an abuse of discretion is found. *United States v. Jackson*, 576 F.2d 46, 49 (5th Cir. 1978); *United States v. McRae*, 593 F.2d 700, 707–08 (5th Cir. 1979), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979); *United States v. Vitale*, 596 F.2d 688, 689 (5th Cir. 1979), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

> MR. DE LUNA: That's fine.
> BY MR. DE LUNA:
> Q Do you know whether Eugenio Moreno is related to Ramon Moreno?
> THE COURT: I will sustain the objection. The jury will not consider that for any purpose whatsoever. Don't go into it any more, Mr. De Luna, please.
> * * * * * * *

Viewed in isolation, without considering his entire testimony, Guidry's testimony on redirect examination concerning appellant's brothers appears to have posed some danger of unfair prejudice in that it could have led the jury to convict appellant either because he was somehow "guilty by association" or because he was a member of a family that had dealt with marijuana in the past.

Nevertheless, it was within the district court's discretion to determine both whether the evidence presented "an *undue* tendency to suggest a decision on an improper basis," Fed.R.Evid. 403, Advisory Committee's Note (emphasis added), and, even if it did, whether this unfair prejudice *substantially* outweighed the probative value of the evidence. Fed.R.Evid. 403; *United States v. McRae*, 593 F.2d at 707. After carefully reviewing the record as a whole and the dialogue during the redirect examination of Guidry in particular, we hold that the district court did not abuse its discretion in allowing into evidence Guidry's testimony concerning the past marijuana transactions of appellant's brothers.

In the first place, Guidry's testimony on redirect examination about appellant's brothers was largely cumulative to testimony elicited by defense counsel themselves on cross-examination. Earlier, during cross-examination by counsel for one of appellant's codefendants, Guidry testified, without objection from appellant's counsel, that he had loaded marijuana for Carlos Moreno in the past. Guidry further testified on cross-examination, again without objection, that one difference between the transaction involved in this case and past transactions in which he had been involved was that, in the transaction involved here, "[t]he Morenos had their own trailer now." Guidry then added that "[t]hey had used other people's trailers." Like his testimony during redirect examination, this testimony strongly suggests that at least some members of the Moreno family have been involved in marijuana transactions in the past. In fact, on direct examination Guidry testified, without objection from defense counsel or further elaboration by Guidry, that appellant himself had "sent" Guidry to the shed in Las Llesgas "before." Guidry's testimony on redirect examination regarding appellant's brothers thus was largely cumulative of his earlier testimony. The trial court apparently recognized this fact to some extent when it noted during the government's redirect examination of Guidry that "Carlos Moreno's name has been bandied around in this case both by the defense and the prosecution...." Record, vol. 2, at 86. The trial court properly could view this cumulative effect as significantly reducing any unfair prejudice Guidry's testimony on redirect examination may have had. *See United States v. Jackson*, 576 F.2d at 49, n. 5. If there were prejudice, it was created largely by defense counsel themselves in their cross-examination of Guidry.

In addition to the largely cumulative effect of Guidry's redirect examination testimony, any unfair prejudice caused by this testimony was further reduced by the trial court's statements and actions during the testimony. When Guidry testified that he had loaded marijuana for "the same Moreno family" before, the court narrowed "the Moreno family" to Carlos Moreno, about whose past marijuana dealings there already had been substantial testimony. Further, after allowing the government to ask a few questions about appellant's brother Eugenio, the court cut off any further questions along that line and instructed the jury not to consider "for any purpose whatsoever" the government's question whether Eugenio Moreno was related to appellant. The court properly allowed the government to inquire into the *names* of people in past transactions. This questioning was a direct response to the trial strategy of defense counsel, who had first asked questions concerning names. Beyond this inquiry into names, however, the court did not permit the government to delve into the specifics of any past transaction.

Accordingly, in light of the other testimony given by Guidry without objection connecting appellant's brother Carlos specifically and appellant's family in general with past marijuana transactions, and

considering the statements and actions of the trial court during the government's redirect examination of Guidry, we cannot say that the trial court abused its discretion in admitting into evidence the references during Guidry's redirect examination to the past marijuana dealings of appellant's brothers. *See United States v. Brown*, 482 F.2d 1226 (8th Cir. 1973) (rehabilitation of attacked memory with testimony regarding narcotics traffic and habits of narcotics dealers in area); *United States v. Vaughn*, 486 F.2d 1318 (8th Cir. 1973) (after impeachment suggesting improbability, rehabilitation showing recent similar heroin transactions by other persons allowed).

Since we reject both of appellant's contentions on this appeal, we affirm his conviction on both counts.

AFFIRMED.