**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Tyrone HAGGINS,
Defendant-Appellant.**

**No. 76–1512.**

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1977.

---

Theodore J. Sakowitz, Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Peter Koste, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and TJOFLAT, Circuit Judges.

TUTTLE, Circuit Judge:

A jury convicted appellant Haggins of violating 18 U.S.C. § 472, which prescribes criminal penalties for anyone who:

"with intent to defraud, passes, . . . attempts to pass . . . or with like intent . . . keeps in possession . . . any . . . counterfeited . . . obligation or other security of the United States."

Haggins made two bets at the Miami Jai-Alai Fronton with counterfeit twenties; a third counterfeit twenty was found in his possession. Since passing and possession were patent, the sole jury question was whether the evidence proved "intent to defraud" beyond a reasonable doubt. The jury concluded that appellant knew the bills were counterfeit. The only issue on appeal is whether the trial court correctly denied Haggins' motion for judgment of acquittal, made after the Government rested and renewed at the close of all the evidence.

## I. THE EVIDENCE

On March 14, 1975, appellant bought twenty dollars' worth of betting tickets on the second game at the Miami Jai-Alai Fronton. He paid for the tickets with a twenty dollar bill that the clerk—one Dominquez—soon discovered to be counterfeit. When appellant attempted to make a second twenty dollar wager with another twenty between games two and three (placing the bets with the same teller), Dominquez informed Haggins that the money was counterfeit, and told him to wait until a security officer was called. The clerk then either left his window to get the security officer, or called to the officer from his window.

The security officer arrived shortly. He conferred with Dominquez and then arrested appellant, who had by that time walked away from the ticket window in the general direction of *both* a fire exit and the pay windows. Appellant voluntarily emptied his pockets, the contents of which included

a third counterfeit twenty and a not insignificant amount of legitimate currency.[1] When Secret Service agents arrived, appellant denied knowing the money was counterfeit, claimed that some of his currency was winnings from game two, and permitted the agents to search his automobile. No other counterfeit was discovered.

Appellant testified that during the discussion between the clerk and the security officer, he cashed several winning tickets on game two at the pay windows. Apparently the security officer believed this at the time, for he confiscated an amount of appellant's cash equal to the price of the tickets plus the payoff on game two. Appellant also testified that his stake for the day, which included the counterfeit bills, was part of some three hundred dollars that he had won the day before at the fronton. The testimony of the cashier who allegedly cashed his winning tickets on the previous day, however, was inconclusive. She categorically denied paying any black males between games one and four, but was unable to say that appellant was not among the black males who cashed winning tickets between games five through twelve.

## II. THE STANDARD OF REVIEW

Responding to defendant's motion for judgment of acquittal, the trial court commented:

"Maybe he just wandered off [from the window]. I think he is capable of it, from my observation of him. . . . It's susceptible of several interpretations. *As long as it is susceptible to one valid interpretation that would sustain a verdict of guilty then I have no alternative except to send it to the jury.*" (Emphasis added.)

Prior to the *Holland* case, *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), this Court had announced the rule that in circumstantial evidence cases to sustain a conviction the inferences to be drawn from the evidence

---

1. For some unexplained reason, neither the Government nor the defendant undertook to prove how many genuine bills Haggins had.

must not only be consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence. *See Vick v. United States,* 216 F.2d 228 (5th Cir. 1954) and other pre-*Holland* cases. Following the *Holland* case, which dealt with the charge to the jury in such a case, this Court has undertaken to formulate a standard to be applied by trial courts in making their determination whether a case should be submitted to the jury. The objective of such determination, of course, is to enable the trial court to terminate as early as possible the case in which the trial court concludes as a matter of law that a jury could not reasonably find guilt beyond a reasonable doubt.[2]

The formulation used by this Court was announced and explained in *United States v. Nazien,* 504 F.2d 394 (5th Cir. 1974), *cert. denied* 420 U.S. 964, 95 S.Ct. 1358, 43 L.Ed.2d 443 (1975):

"Appellants rely on the case of *Vick v. United States,* 5 Cir., 1954, 216 F.2d 228. There we held that the presence near an illegal distillery of one who could have been a hunter (in possession of a shotgun), coupled with flight, without more, was insufficient to warrant conviction. We stated that to sustain conviction in a circumstantial evidence case, the inferences reasonably to be drawn from the evidence must not only be consistent with the guilt of the accused but inconsistent with every reasonable hypothesis of innocence.

In *Surrett v. United States,* 5 Cir., 1970, 421 F.2d 403, we reconciled *Vick* and its progeny with *Holland v. United States,* 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150, and held that 'the test is not whether the evidence is inconsistent with the hypothesis of innocence but rather whether reasonable minds could so conclude' . . . . Then in *United States v. Black,* 5 Cir., 1974, 497 F.2d 1039, 1041, we added that whether the

evidence be direct or circumstantial, the matter of the defendant's guilt is for the jury unless the court concludes that the jury must necessarily have had a reasonable doubt as to the inconsistency. See also *United States v. Hill,* 5 Cir., 1973, 481 F.2d 929, 931; *United States v. Stephenson,* 5 Cir., 1973, 474 F.2d 1353, 1355."

■ This standard has been subsequently restated in terms of "hypothesis of innocence" in *United States v. Smith,* 493 F.2d 24, 26, where this Court said:

"Additionally, the test is not whether the trial judge or the appellate judge concludes that the evidence fails to exclude every reasonable hypothesis but that of guilt, but whether the jury might reasonably so conclude."

■ We construe this language as meaning the same thing as stated in *Nazien, i. e.,* that if the trial or appellate court is satisfied that the jury could not reasonably conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt then the trial court, or on appeal, this Court must hold that "the jury must necessarily have had a reasonable doubt as to the inconsistency." *Nazien v. U. S., supra,* 395.

■ In view of the fact that *Holland* held that "the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect," *Holland, supra,* 139–140, 75 S.Ct. 137, trial courts do not charge the jury on the "reasonable hypothesis" rule. It is therefore more readily applicable by the trial court if we adhere to the language of "reasonable doubt" as stated in *Nazien, supra.*

It is apparent that the trial court here announced a standard for sending this case to the jury that, if it truly represented its evaluation of the evidence, was the reverse of the pre-*Holland,* and fell short of the post-*Holland,* rule. The question the trial

2. As Professor Wright has observed: "The directed verdict for defendant or judgment of acquittal 'is an important safeguard to the defendant. It tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt.' " C. Wright, Federal Practice and Procedure: Criminal, § 461 at 243 (1969).

court should have answered was: "On this evidence do I find that a reasonably minded jury must necessarily entertain a reasonable doubt?" If this question is answered in the affirmative, then a judgment of acquittal should follow.

## III. ANALYSIS OF THE EVIDENCE

█ *A. Inferring Guilty Knowledge* —To prove a violation of 18 U.S.C. § 472, the Government must not only show that the accused passed or possessed counterfeit money, but that he did so with intent to defraud. The requisite *mens rea* cannot be proved by a showing of possession or passing alone. *See, e. g., United States v. Jiminiz-Serrato,* 451 F.2d 523 (5th Cir. 1971) (possession); *Paz v. United States,* 387 F.2d 428 (5th Cir. 1967) (passing).

█ Guilty knowledge can, however, be inferred from a rapid series of passings, *e. g., Ruiz v. United States,* 374 F.2d 619 (5th Cir. 1967); *United States v. Releford,* 352 F.2d 36 (6th Cir. 1965), or where counterfeit is passed at several different establishments, *e. g., Marson v. United States,* 203 F.2d 904 (6th Cir. 1953), even though the defendant is not positively identified at other places in the vicinity, *United States v. Finnerty,* 470 F.2d 78 (3d Cir. 1972). Use of large counterfeit bills rather than change received in prior purchases is also highly probative of guilty knowledge, *see Carrullo v. United States,* 184 F.2d 743 (8th Cir. 1950), as is an attempt to destroy or abandon counterfeit currency when capture. is imminent, *see, e. g., United States v. King,* 326 F.2d 415 (6th Cir. 1964); *United States v. Kelley,* 186 F.2d 598 (7th Cir. 1951).

*B. "Negative" Evidence*—Appellant made no attempt to use the counterfeit twenties to pay for lesser-priced bets or services (parking and admission) in order to obtain legitimate currency. Despite being told that the money was counterfeit, appellant apparently made only the mildest effort to escape (if his movement away from the windows can be labeled as an attempted escape). Indeed, he may have been cashing win tickets (a claim the security officer believed and which the Government strangely made no attempt to contradict) rather than heading for the fire exit. Finally, appellant did not attempt to destroy the third twenty before he was arrested, although he certainly had the time. This item of negative evidence is not dispositive, of course, but this Court has previously noted that "[p]robably the strongest evidence of guilty knowledge is an attempt to abandon counterfeit currency when detection is feared." *Ruiz v. United States,* 374 F.2d 619, 620 (5th Cir. 1967).

█ *C. Evidence Against Appellant* —Two items of circumstantial evidence do suggest guilty knowledge: the fact that appellant moved away from the ticket windows in the direction of the fire exit, and the fact that he was connected with three counterfeit bills.[3] The more important fact, we think, is that after being told there was some question about the genuineness of the money, the appellant left the ticket window and was later apprehended in the vicinity of

**3.** The Government considers it significant that appellant allegedly placed both bills face down when he passed them. We cannot agree. We have no way of knowing whether it is normal for a person to present a bill face up or face down at a betting window. Moreover, we understand the Government to be suggesting that the normal action is to present a bill face up— but if so, it would seem that a person intending to pass counterfeit would be unlikely to draw attention to himself by presenting a bill face down. Finally, we fail to see how the manner in which the bill was presented would affect the likelihood that it would be accepted: both sides, after all were counterfeit.

Nor do we discern any significance in the fact that appellant was unable to conclusively prove that he obtained the bogus twenties as part of a payoff on the previous day. If he knowingly attempted to pass counterfeit back to fronton, he violated section 472 regardless of how he received the money. *See United States v. Casey,* 431 F.2d 953, 954 (5th Cir. 1970) (per curiam) (defendant received one counterfeit bill as part of loan proceeds; repeated attempts to pass the bill to others despite refusals showed guilty knowledge). On the other hand, the fact that a defendant is unable to explain how he received counterfeit is of no consequence as long as possession and passage are not, in themselves, sufficient to prove guilty knowledge.

a fire exit. The difficulty with this evidence, however, is that he was also in the vicinity of the pay windows, and claimed to have just cashed some winning tickets on the previous game. Thus the fact that appellant left the ticket window and was walking in a particular direction is *equally* consistent with (1) the theory that he was making a nonchalant getaway, or (2) the theory that he was merely biding his time (while the clerk and the security officer conferred) by cashing his winning tickets.[4]

The trial judge's remarks about this conduct of the defendant are quite significant, as quoted above: "Maybe he just wandered off—I think he is capable of it, from my observation of him . . . . It's susceptible of several interpretations."

The remaining item of circumstantial evidence that suggests guilty knowledge is the fact that appellant had three counterfeit bills in his possession. While a large amount of counterfeit money would be highly probative of guilty knowledge, we are not convinced, in the circumstances of this case, that three bills are enough. Our conclusion is buttressed by prior decisions of this Court which indicate that the judgment of acquittal should have been granted.

In *Paz v. United States*, 387 F.2d 428 (5th Cir. 1967), the defendant paid for two dollars' worth of gas with a counterfeit twenty, and drove away with the change. The attendant realized that the money was counterfeit, and called the sheriff of a neighboring county who then arrested the defendant. A search disclosed some $470 in currency, including one other counterfeit twenty. Finding no other purchases, no attempt to abandon the money, no furtive conduct, and no original acquisition at a discount, the court held that the jury's verdict was not supported by substantial evidence:

> "[A]ll that was shown was one purchase for an amount substantially less

than the amount of the note, followed by recognition of the first, and then the second, bill as counterfeit. . . .
There is no evidence that the normal, reasonable person in pursuit of his own affairs, not alerted by some fact, statement or circumstance to be on the lookout for counterfeit bills, would have recognized either bill as spurious."
387 F.2d at 430–31.

Similarly, in *United States v. Alea*, 433 F.2d 948 (5th Cir. 1970), the court reversed a jury verdict, under the substantial evidence test, where the only evidence was that appellant had passed a counterfeit ten on a three dollar purchase, and that a few days later another bad ten, on which the license number of a car seen parked in front of the defendant's house had been written, appeared at a local bank.

Had appellant made only one bet, the case would be almost indistinguishable from *Paz* and *Alea*. We do know, however, that appellant attempted to pass two bills proven to be bogus and that a third was found in his possession. But he *was* making twenty dollar bets, and we have no evidence showing that such bets were unusual for him, or that the twenties were so obviously counterfeit that possession of three of them would warrant an inference of guilty knowledge. Indeed, appellant apparently was a frequent customer at the fronton, and was a heavy bettor who claimed to have received the twenties as part of a large payoff the previous day.

 Considering the evidence in this record bearing on the proof of intent to defraud, we have a clear and definite impression that the case should not have been submitted to the jury since we conclude that any reasonable jury considering the evidence which we have outlined "must necessarily have had a reasonable doubt as to" the guilt of the defendant, *Nazien, supra*, 395.

---

4. We note in passing that flight alone is no litmus test for intent, and may not be sufficient to send the case to the jury. See *Vick v. United States*, 216 F.2d 228, 232–33 (5th Cir. 1954) (moonshining case: where only evidence of defendant's guilt was that he was present at still and fled when revenue officers approached, *held*, judgment of acquittal should have been granted).

The judgment appealed from is therefore reversed and the case is remanded to the trial court to enter a judgment of acquittal.

REVERSED and REMANDED with directions.