UNITED STATES of America,
Plaintiff-Appellee,

v.

William Thomas PINNER,
Defendant-Appellant.

No. 77–5174
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1977.

Joseph G. Young, John F. Roscow, III, Gainesville, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Lee S. Carlin, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

* Rule 18, 5 Cir.; See *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Before GOLDBERG, RONEY and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellant, William Thomas Pinner, appeals his conviction in a non-jury trial on six counts of willfully failing to file employer's quarterly federal tax returns in violation of 26 U.S.C. § 7203.[1] The trial was tried on stipulations which allowed the Government to introduce two exhibits, (description below). The Government then rested its case without introducing any testimony. Counsel for appellant then made a Motion for Judgment of Acquittal pursuant to Rule 29(a), F.R.Crim.P., and for Special Findings of Fact under Rule 23(c), F.R. Crim.P. The motions were denied. Defense then rested without introducing any testimony or evidence and renewed the Motion for Judgment of Acquittal. After argument, Pinner was found guilty on each of the six counts with which he was charged. Defense counsel again asked the Court for Special Findings of Fact and the Court granted this request by entering the document set out in the margin.[2]

Appellant raises three assignments of error, all of which we find to have some merit, and on this basis we remand to the trial court for findings consistent with this opinion.

## FACTS

Appellant opened Bill Pinner Footwear in March, 1968, as a sole proprietorship which operated at a loss until approximately two years ago. During the last two quarters of 1973 and all four quarters of 1974, appellant failed to timely file the Employer's Quarterly Federal Tax Return, Internal Revenue Form 941.

At trial, the only evidence consisted of two exhibits submitted by the Government. Exhibit 1 contained summaries of interviews by Internal Revenue representatives with appellant.

The first interviews, in March, 1974, were with Kathy Howell, Taxpayer Service Representative for the Internal Revenue Service. At that time Pinner acknowledged he had not filed the required returns.[3]

1. "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution." 26 U.S.C. § 7203.

2. Document entered by Trial Court pursuant to Motion for Special Finding of Fact:

FINDINGS OF FACT AND
CONCLUSIONS OF
LAW

On this the 8th day of March, 1977, came on for trial the above styled and numbered cause and the Court, pursuant to the request of counsel made under Rule 23(c) of the Federal Rules of Criminal Procedure, hereby enters its Findings of Fact and Conclusions of Law.

1. During the periods covered by each of the six Counts of the Information defendant was required to make a return of Federal Income Taxes withheld from wages and Federal Insurance Act taxes pursuant to 26 U.S.C., Section 6001 et seq.

2. The defendant for each of the six periods in question failed to make a timely tax return.

3. The defendant's failure to make a timely Income Tax Return for each of the taxable periods in question was a knowing and wilful failure.

4. Pursuant to the above, the defendant should be found guilty of each of the six counts contained in the Information and Judgment should be entered accordingly.

ENTERED this 8th day of March, 1977 at Jacksonville, Florida.

s/John H. Wood, Jr.
JOHN H. WOOD, JR.
UNITED STATES
DISTRICT JUDGE
BY DESIGNATION

3. "Again while I do not recall the specific conversations with Mr. Pinner I can state from the absence of any notations that Mr. Pinner did not present any questions concerning his requirement to file or pay. Should he have presented any questions I would have answered them or referred him to the Gainesville office and made a notation to that effect on the

In March, 1975, IRS Revenue Officer Lynn D. Mathis interviewed appellant concerning all six quarters.[4] Two months later the investigation intensified and Special Agent Larry E. Wine, Department of the Treasury and Revenue Officer Mathis contacted appellant concerning the forms not filed. Exhibit 1 contains a summary of this interview set forth by Agent Wine.[5]

TDI. Should there have been any questions concerning his ability to pay the taxes I would also have made a notation on the TDI and informed him that even if he couldn't pay to go ahead and file the returns and he could go over payment with the Revenue Officer once a TDA had been issued. I do not recall any explanations or comments that may have been made by Mr. Pinner as to why he had not filed these returns." (Stip. ¶ 13, Ex. E–1.)

4. "When I asked him why this happened [the non-filing of the Forms 941 for the six enumerated quarters], he volunteered that he was fully aware that the delinquent returns should have been filed and paid but he was solely responsible for their preparation and pressing business affairs, procrastination, and shortage of working capital were the only reasons the returns had not been filed or paid." (Stip. ¶ 14, Ex. F–1.)

5. "Pinner stated: 'I think I've got enough money. I started to file four or five times, but got shortcutted every time. I made deposits on the first quarter of 1975, but haven't filed the return yet.' When asked if he had been contacted previously concerning employment tax returns, Pinner responded: 'Yes, I was contacted by Revenue Officer Hutchinson of the local IRS office.' He did not recall any prior contacts with Revenue Officer Dobbins. He did not recall which quarters prior to the third quarter of 1973 that he had problems with. Pinner did not recall any of the prior Revenue Officers (Hutchinson or Dobbins) advising him that he could file the returns without including payment and when asked if he knew he could file without payment, he stated: 'No, I thought I had to have the money to file.' He did not recall that he had never been advised not to file any returns. Pinner said he did not initiate a contact with any IRS personnel and that after Revenue Officer Mathis' contacts, he 'felt like speaking with Mr. Mathis, I needed to do something faster than that (like) selling stocks' but he just didn't make any contacts. When asked why he did not file the returns, Pinner stated: 'I guess I was going in too many directions, but I must have thought a miracle or something was going to happen. I guess I was too involved in Mary's business and Gator Shoe Repair, working until one or two in the morning. I procrastinated.' I asked him what course of action he planned to take in respect to preparing and filing the returns. He said he did part of the forms either at the end of the quarter or at the end of the year in order to prepare the employee's W–2's. He also said he was just going to let it slide. When asked if he discussed the failure to file with his C.P.A., John Almeida of Moore, Cobb & Co., he stated: 'No sir, if I'd done that, I wouldn't be in this shape now.' Almeida died five or six months ago. Pinner did discuss the sale of his Atlantic Bank stock with Almeida who offered him half of what it cost. He decided that he would take such a beating he decided not to sell his stock. He did not think anyone else besides he and Almeida was aware of their conversation. He did discuss the stock with some other people, but didn't recall their names. Almeida prepared his 1973 Form 1040 and the firm is currently preparing his 1974 Form 1040 and a current financial statement. When asked why he didn't have his C.P.A. prepare the 941's, he stated: 'Frankly, I felt like I couldn't afford it.'

"For the July 1, 1973 to December 31, 1974 time period, Pinner said he paid his employees 'hourly only'. He deducted FICA and withholding from his employees' wages and when [sic] asked if he used Circular E to determine the amounts of FICA and withholding stated: 'Yes, I used Circular E, I looked up the amounts to withhold myself.' He did not read any portion of Circular E, rather simply used the tax tables in this publication. Pinner personally prepared, endorsed, and gave his employees their payroll checks. He was aware of the requirement to deduct withholding tax and FICA and did the same. When further asked if he was aware that he was a trustee for those withheld funds, Pinner said: 'Yes sir, I was aware they had to be paid'. When asked if he was aware that the 941's had to be filed within thirty days of the end of the quarter, he replied: 'Yes sir'. Pinner volunteered that he should have kept a better grip on the situation and that he 'could probably have borrowed the money but just didn't do it. I approached the First National since Revenue Officer Mathis' contact and I think I've got the money now to take care of it.'

"Pinner stated that he prepared and gave to his employees Forms W–2 for 1973 and 1974 from the check stubs as he did not keep his payroll ledgers current. He used Form 501 depository cards on some occasions and at first was not certain what periods they were used. He first thought he used the 501's for the first and second quarters of 1973, but later located a bill from Chamblee that would indicate deposits were not made with the 501's. He did not recall using the 501 cards during the July 1,

Several days later, on May 9, 1975, Agent Wine again contacted appellant to return records provided by appellant. At that time appellant stated, "I could have filed, but I didn't" for which a specific question had not been asked to elicit that response. Agent Wine asked Pinner if he was aware that he could have filed the returns without including payment to which Pinner responded, "At the time I was not aware I could file without paying." The last comment set forth by Agent Wine in his interview summary was made after Wine explained that he could have filed without including payment. Pinner's response was, "I didn't understand."

## ISSUES

■ Appellant argues that the Court's entry of the document captioned Findings of Fact and Conclusions of Law was an inadequate response to his request for special findings of fact. Rule 23(c), F.R. Crim.P. We agree.

■ A defendant's request for special findings must be granted. Although these findings may be written or gleaned from comments from the bench, they must afford a basis for intelligent appellate review.

1973 to December 31, 1974 time period. He thought he also used the cards in 1975 and is making the deposits at the Sun Bank in Gainesville. He filed with State of Florida unemployment tax Forms UCT–6 and included payment with the returns. He said: 'I filed at the end of each quarter, except one.' This quarter was filed late. When asked why he filed the State tax forms and not the Federal forms, he said: 'Because I had the money to do it'. He used estimated payment Forms 1040ES for his personal return. Pinner explained that he was not able to meet these payments but that the amount of 941 taxes was too large to make payments." (Stip. ⌐ 15, Ex. H–5–6).

6. The term "willfully", as used in the Internal Revenue Code provisions proscribing criminal acts, is defined as " . . . a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12, 14 (1976).

7. THE COURT: But the circumstantial evidence rule that he is stating there is no longer the test by the Supreme Court.

MR. CARLIN (Government counsel): That's correct, sir.

*United States v. Johnson*, 496 F.2d 1131, 1138 (5th Cir. 1974).

■ In this case, the trial judge did not make either a specific written finding or a comment from the bench clearly announcing his findings as to appellant's credibility during his interviews with the IRS. This finding is especially important because appellant's belief that he did not have to file if he was not able to pay the tax owed is a recognized legal defense against the element of "willfulness".[6] *United States v. Haller*, 543 F.2d 62 (9th Cir. 1976); *United States v. Rosenfield*, 469 F.2d 598 (3rd Cir. 1972). We therefore remand to the trial judge for a specific finding with respect of Pinner's credibility.

During argument for Pinner's Motion for Judgment of Acquittal, the trial judge made several statements[7] which make it difficult to decide whether he was applying the correct rule of law in evaluating the circumstantial evidence presented by the Government to prove the element of "willfulness".

There has been some confusion and a metamorphosis in the law on circumstantial evidence.

THE COURT: It does not have to preclude every reasonable hypothesis. In fact, the circumstantial evidence is given the same weight as direct evidence provided the circumstances are strong enough. And generally speaking, that's up to the trier of the facts.

MR. CARLIN: That's correct, sir. The proper test, I believe, Your Honor, is that a reasonable man could find that the inferences exclude a reasonable hypothesis of innocence. (R. 77)

\* \* \* \* \* \*

THE COURT: How could you ever establish a case of willful intent? What circumstances would have to exist where the trier of the facts could ever find? Now, if you are going to deal with the question of circumstantial evidence, you don't have to exclude every reasonable hypothesis any longer. The Supreme Court has repeatedly held that that is not necessary any longer. And I refer you to the very recent case of the *United States v. Cortez* [5 Cir.] at 521 F.2d, a 1975 case appearing on page 1, an opinion by Judge Gewin, Goldberg and Dyer. You don't have to negative every reasonable hypothesis. (R. 87–88)

In 1954, the Supreme Court held that it was not necessary for the trial judge to instruct the jury " . . . that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt." *Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150, 166 (1954). " . . . [T]he better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect . . .." [citations omitted]  *Holland*, 348 U.S. at 139--140, 75 S.Ct. at 137.

 Since *Holland* this Court has formulated a standard to be used by trial courts in determining whether a case should be submitted to a jury or whether in a case tried to a judge a motion for judgment of acquittal should be granted. That standard is:

> " . . . if the trial or appellate court is satisfied that the jury could not reasonably conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt then the trial court, or on appeal, this Court must hold that 'the jury must necessarily have had a reasonable doubt as to the inconsistency.' " [citation omitted]

*United States v. Haggins*, 545 F.2d 1009, 1012 (5th Cir. 1977). Thus in responding to a defendant's motion for judgment of acquittal the trial judge must ask:

> "On this evidence do I find that a reasonably minded jury must necessarily entertain a reasonable doubt?"

*Haggins*, 545 F.2d at 1013.

If the trial court answers in the negative then the motion should be denied. Then as fact finder and using the correct legal principles the judge must determine whether or not he was convinced the Government had established each element beyond all reasonable doubt.

**8.** If the appellant did not file because he mistakenly believed he could not without simultaneously paying the tax due, he must be acquitted. If, on the other hand, different factual findings are made, they must be set forth in the record.

On the basis of the foregoing we remand this case back to the trial judge for specific findings, particularly as to "why" Pinner did not file,[8] and application of the proper legal principles.

The denial of the motion for judgment of acquittal, the adjudication of guilt, the findings of fact and conclusions of law, and the judgment and commitment are all vacated and the matter remanded for additional proceedings consistent herewith. If further appellate proceedings are necessary, the parties may file a supplemental record with supplemental briefs as this court retains jurisdiction for such later review.