UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe SLONE, a/k/a Jose Cardenas,
Defendant-Appellant.

No. 78–5729.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1979.

Thomas M. Sherouse, Miami, Fla. (Court-appointed), for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., A. Scott Miller, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, TJOFLAT and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

Appellant Joe Slone and his wife, Aida Gil de Cardenas, were tried for illegal possession, with intent to defraud, of $5,000 in counterfeit fifty dollar Federal Reserve Notes, in violation of 18 U.S.C., Section 472 (1976).[1] A jury acquitted Cardenas but found Slone guilty. Slone was sentenced to a term of one year and one day. On appeal Slone challenges the sufficiency of the government's evidence, arguing that the circumstantial evidence adduced at trial is, as a matter of law, not sufficient to support his conviction. Agreeing that on the evidence presented a reasonably minded jury would necessarily have to entertain a reasonable doubt as to the guilt of the defendant, we reverse and remand, with directions to enter a judgment of acquittal.

## I

### FACTS

Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the facts are as follows.

On August 4, 1978, Slone, his wife, and child, after arriving from Colombia, presented themselves for baggage inspection at the Customs belt in Miami International Airport. Customs Inspector Fraind examined their declaration card and asked them routine questions, including, "Do you have any items of food, fruit, plants, alcohol, seeds?" Slone replied, "No". A few seconds after that question, the Inspector glanced at the wife's handbag. Slone quickly reached to his wife's purse and grabbed a piece of cake, which was lying among some airline napkins, from out of the top of the purse. Slone "gobbled" the cake down in ten to twelve seconds and then said, "Now you can't get it". The Inspector asked, "What did you do that for, Mr. Slone?", but Slone did not answer.

Inspector Fraind then asked Mrs. Cardenas to place the handbag on the counter, thinking there might be more food. At that time, the Inspector noticed a sum of money partially visible beneath the airline napkins. There was a bundle of neatly

---

1. 18 U.S.C., Section 472 (1976) reads as follows:

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

stacked bills which looked "brand new". The Inspector particularly noticed the color of this bundle, which was stacked "just like it had been cut, with a rubberband around it". The Inspector also observed older currency lying loose at the top of the bag, some of which was on top of the new currency. Viewing the stack of new bills with suspicion, Fraind called the Secret Service to check out the serial numbers on the currency.

Mrs. Cardenas' handbag contained a bundled package of one hundred fifty dollar bills, later found to be counterfeit. A piece of paper was lying over the bundle. Approximately four hundred dollars in legitimate currency was lying loose in the bag. This legitimate currency was older, and of various denominations between one dollar and twenty dollars. A search of the remainder of the family's luggage revealed nothing suspicious.

Responding to Inspector Fraind's phone call, Secret Service Special Agent Rutledge arrived and interviewed Slone concerning the counterfeit money found in his wife's purse. Slone told Rutledge that he had acquired the money on August 2, 1978, in Cali, Colombia. Slone said he had purchased the money for 180,000 Colombian pesos from a person named Omar Obailyo at a bar owned by Slone's wife. Slone could not tell Rutledge much about Obailyo and did not know where Obailyo could be reached. Slone admitted placing the money in his wife's bag but denied knowing that it was counterfeit.

At trial Slone in essence repeated the information he had told Rutledge. He explained that in purchasing money for his trip to the United States he had been unable to get satisfactory terms on the black market, his usual source for American currency. Slone stated that after a series of negotiations with Obailyo he had bought the money at a rate of 36 pesos per dollar. He further testified that the official exchange rate was 39.50 pesos per dollar and that the usual black market price was 37 or 38 pesos, though the price would occasionally go as low as 35 per dollar. At trial Slone

could give no more information about Obailyo than that which he had given Rutledge. The government did not produce Obailyo or introduce any direct evidence concerning the transaction.

## II

### SUFFICIENCY OF THE EVIDENCE

Appellant attacked the sufficiency of the government's case by a motion for acquittal at the close of the case-in-chief and renewed the motion at the close of all the evidence. This alleged insufficiency is the sole point on appeal.

We have often articulated the standard of review in a criminal case when the issue is the sufficiency of the evidence. Reduced to its plainest formulation, that test is as follows: whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendant's guilt under the evidence, *United States v. Caro*, 5 Cir., 1978, 569 F.2d 411, 416; *United States v. Juarez*, 5 Cir., 1978, 566 F.2d 511, 513; *United States v. Barrera*, 5 Cir., 1977, 547 F.2d 1250, 1255; *United States v. Haggins*, 5 Cir., 1977, 545 F.2d 1009, 1012, 1013; *United States v. Stephenson*, 5 Cir., 1973, 474 F.2d 1353, 1355; *United States v. Warner*, 5 Cir., 1971, 441 F.2d 821, 825, *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

In setting forth this standard in *United States v. Haggins, supra*, we elaborated upon the use of this criterion:

> [I]f the trial or appellate court is satisfied that the jury could not reasonably conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt then the trial court, or on appeal, this Court must hold that "the jury must necessarily have had a reasonable doubt as to the inconsistency".

*United States v. Haggins*, 545 F.2d at 1012, quoting *United States v. Nazien*, 5 Cir., 1974, 504 F.2d 394, 395, *cert. denied*, 420 U.S. 964, 95 S.Ct. 1358, 43 L.Ed.2d 443 (1975).

We have alternatively expressed the standard as whether reasonable minds could have found the evidence inconsistent with

every reasonable hypothesis of the defendant's innocence, *United States v. Henderson,* 5 Cir., 1979, 588 F.2d 157, 161; *United States v. Lonsdale,* 5 Cir., 1978, 577 F.2d 923, 925; *United States v. Martinez,* 5 Cir., 1977, 555 F.2d 1269, 1271; *United States v. Prout,* 5 Cir., 1976, 526 F.2d 380, 384, *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976).

Expressed either way, the standard for review gives great respect to the finding of the jury, but it likewise holds the government to its burden to adduce a case against the defendant. A motion for acquittal, therefore, should be granted when the evidence is such that a reasonably minded jury must have a reasonable doubt as to the existence of any element of the crime, *United States v. Pinner,* 5 Cir., 1977, 561 F.2d 1203, 1207; *United States v. Barrera,* 5 Cir., 1977, 547 F.2d 1250, 1255; *United States v. Stephenson,* 5 Cir., 1973, 474 F.2d 1353, 1355.

In evaluating a claim of insufficient evidence according to this standard, we must consider the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), resolving reasonable inferences and credibility choices in support of the jury's verdict, *United States v. Henderson,* 5 Cir., 1979, 588 F.2d 157, 161; *United States v. Juarez,* 5 Cir., 1978, 566 F.2d 511, 513, *United States v. Prout,* 5 Cir., 1976, 526 F.2d 380, 384, *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976). At the same time we require the government to prove each element of the crime beyond a reasonable doubt, *United States v. Barrera,* 5 Cir., 1977, 547 F.2d 1250, 1255.

To prove each element in this case, the government must rely upon circumstantial evidence. Since circumstantial evidence is to be treated no differently than direct evidence, *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the test for judging the sufficiency of the evidence is the same whether the evidence is direct or circumstantial, *United States v. Bright,* 5 Cir., 1977, 550 F.2d 240, 242; *United States v. Gomez-Rojas,* 5 Cir., 1975, 507 F.2d 1213, 1221, *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Warner,* 5 Cir., 1971, 441 F.2d 821, 825, *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

Accordingly we proceed to an analysis of the evidence in light of these considerations. To prove a violation of 18 U.S.C., Section 472, the government must show not only that the defendant passed or possessed counterfeit money but also that he did so with intent to defraud. Knowledge that the notes were counterfeit is necessary to establish the statutory requirement of intent. We have consistently stated that a mere showing of passing or possession, without more, is insufficient to prove the requisite mens rea. *See, e.g., United States v. Sink,* 5 Cir., 1978, 586 F.2d 1041, 1049, cert. denied, —— U.S. ——, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979); *United States v. Haggins,* 5 Cir., 1977, 545 F.2d 1009, 1013; *United States v. Jiminez-Serrato,* 5 Cir., 1971, 451 F.2d 523, 525 (possession); *Paz v. United States,* 5 Cir., 1967, 387 F.2d 428, 430 (passing).

On the other hand, the necessary "guilty knowledge", often difficult to prove through direct evidence, may be inferred from other circumstantial evidence. Surrounding circumstances may supply inferences of knowledge which adequately prove intent, *United States v. Sink,* 5 Cir., 1978, 586 F.2d 1041, 1049, *cert. denied,* —— U.S. ——, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). Thus guilty knowledge may be inferred from a rapid series of passings, *Ruiz v. United States,* 5 Cir., 1967, 374 F.2d 619, from the use of large counterfeit bills rather than change received in prior purchases, *Carrullo v. United States,* 8 Cir., 1950, 184 F.2d 743, from an attempt to destroy or abandon counterfeit currency when capture is imminent, *United States v. King,* 6 Cir., 1964, 326 F.2d 415; from furtive conduct by the defendant, *United States v. Forzano,* 2 Cir., 1951, 190 F.2d 687; and from knowledge that the bill had been previously turned down as being no good, *United States v. Casey,* 5 Cir., 1970, 431 F.2d 953.

In numerous instances, however, we have found the defendant's conduct at or near the time when the counterfeit money was passed to be insufficient to create an inference of guilty knowledge. *See, e.g., United States v. Haggins,* 5 Cir., 1977, 545 F.2d 1009 (evidence that defendant moved away from betting ticket window, after being informed that his money was counterfeit and after being told to wait for a security officer, was not sufficient for jury to infer intent since his actions were equally consistent with theory that he was going to paying window to cash his tickets); *United States v. Musquiz,* 5 Cir., 1971, 445 F.2d 963 (evidence, in the form of a purported in-court identification, of mere passage was insufficient); *United States v. Jiminez-Serrato,* 5 Cir., 1971, 451 F.2d 523 (evidence that defendant accepted a closed envelope containing counterfeit money was insufficient to create inference of knowledge); *United States v. Bean,* 5 Cir., 1971, 443 F.2d 17 (evidence that defendant took large bill from a wallet containing smaller bills to pay for an 83-cent purchase is, without more, insufficient to constitute evidence of guilty knowledge); *United States v. Alea,* 5 Cir., 1970, 433 F.2d 948 (fact that fifteen year old boy detected counterfeit bill is inadequate to create inference of knowledge by defendant); *Paz v. United States,* 5 Cir., 1967, 387 F.2d 428 (showing of one purchase for an amount substantially less than the amount of the bill, followed by recognition of the first, and then a second, bill as counterfeit does not establish inference of guilty knowledge).

In this case, unlike our prior cases in which knowledge has been inferred, there was no rapid series of passings, no effort to abandon the money, no scheme for paying for small purchases with large counterfeit bills and segregating the change. The only conduct upon which the government must rest its charge is the action of the defendant in grabbing and gobbling an uneaten piece of cake—an action which could only draw attention to the purse in which the counterfeit money lay—and the possession of a substantial sum of counterfeit money. The government has shown nothing more.

To be sure, the jury, as was its prerogative, did not believe Slone's explanation of how he purchased the money in Colombia, but the government failed to introduce any affirmative evidence that would demonstrate that Slone knew, or should have known, that the money was counterfeit. There was, for example, no testimony presented to challenge Slone's explanation of the operation of the black market. The government likewise introduced no evidence that would contradict Slone's account of the transaction with Obailyo. While the jury was within its right to disbelieve the defendant's account, such disbelief, standing alone, is inadequate to meet the government's affirmative obligation to produce evidence to support each element of the charge.

■ Thus only the defendant's conduct at the airport may give rise to the inference of knowledge. We are unpersuaded that Slone's conduct involving the cake, though certainly contemptuous and immature, may be used to infer knowledge of the counterfeit money. It seems unreasonable that a person attempting to bring counterfeit money into the country would act in a manner which could only arouse the suspicion of a Customs Inspector. A more logical explanation would be that Slone, having just heard the Inspector ask about food, suddenly remembered the uneaten cake and in a demonstration of poor judgment hastily seized it and ate it. At any rate, the other evidence is not inconsistent with Slone's theory of innocence, and under our standard of review, the jury must necessarily resolve such a state of equipoise in favor of the defendant. Slone's action with the cake thoroughly convicts him of being a "smart alec", whose conduct brought him plenty of difficulty, but it does not support, beyond a reasonable doubt, the inference that he knew the money was counterfeit.

■ Possession of a substantial amount of money which close observation would reveal to be counterfeit might be grounds for inferring knowledge and intent to defraud. In such a case, because of the sheer

size of the amount, the court might presume that the defendant had examined it closely and he might thus be deemed to have known it was counterfeit. In *obiter dicta* in *United States v. Haggins, supra,* the Court implied that the possession of a large amount of counterfeit money might give rise to an inference of knowledge,[2] but there was no testimony that the defendant should have been able to tell that the money was counterfeit. Indeed, although Inspector Fraind testified that he had a funny feeling about the way the money looked, he also testified that he was nevertheless prepared to let the defendant go if a check of the serial numbers by the Secret Service revealed nothing unusual. The money was not so obviously counterfeit as to cause the Inspector to expect to take other action. There was likewise no testimony that Slone had greater expertise in determining the authenticity of money than the ordinary American. If the money was sufficiently like the real thing to constitute a violation of 18 U.S.C., Section 472,[3] then it makes no sense to charge Slone with being able to tell it was counterfeit. We must be reluctant to impose a greater standard of observation than presently exists upon the ordinary citizen in transactions involving currency, and we feel unjustified on the facts of this case to reverse the well settled principle that proof of the mere possession of counterfeit money is inadequate to obtain a conviction under 18 U.S.C., Section 472. On the facts of this case, we hold that the possession of $5,000 in counterfeit notes, without more, does not create an inference of guilty knowledge.

Considering *all* the circumstances, the evidence was not inconsistent with Slone's

theory of innocence, and the jury must reasonably have concluded that there was a reasonable doubt about Slone's guilt.

We reverse Slone's conviction and remand for the entry of a judgment of acquittal.

REVERSED.

---

**2.** In *United States v. Sink*, 5 Cir., 1978, 586 F.2d 1041, *cert. denied*, —— U.S. ——, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979), a case decided after *Haggins*, we did not consider the possession of $33,000 in counterfeit currency as a factor to be considered in proving guilty knowledge.

**3.** The standard for determining what constitutes a counterfeit obligation has been stated as whether the fraudulent obligation bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting

person of ordinary observation and care dealing with a person supposed to be upright and honest, *United States v. Chodor*, 1 Cir., 1973, 479 F.2d 661, 664, *cert. denied*, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973). See, also, our recent discussion in *United States v. Turner*, 5 Cir., 1978, 586 F.2d 395, *cert. denied*, —— U.S. ——, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979).