**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Adolfo H. GONZALEZ,**
**Defendant-Appellant.**

**No. 79–5516.**

United States Court of Appeals,
Fifth Circuit.

May 14, 1980.

Louis R. Beller, Miami Beach, Fla. (Court-Appointed), for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Linda Collins Hertz, A. Scott Miller, Asst. U. S. Attys., Miami, Fla., for the U. S.

Before COLEMAN, Chief Judge, PECK *, and KRAVITCH, Circuit Judges.

COLEMAN, Chief Judge.

In a jury trial the appellant, Adolfo H. Gonzalez, was convicted of illegally possessing, with intent to defraud, $200 in counterfeit Federal Reserve Notes (two $50 notes and five $20 notes), in violation of 18 U.S.C. § 472 (1976).[1]

On appeal Gonzalez argues that the government's circumstantial evidence is, as a matter of law, not sufficient to support his conviction. In response to this we must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed.680 (1942). We affirm the conviction.

Before beginning his regular patrol at 11 p. m. on December 2, 1978, Miami Beach Police Officer Bauer, under the supervision of his sergeant, conducted a customary, standard search of his patrol car. He examined the trunk, the glove compartment, and the floor. He also lifted the back seat and searched beneath it. He found nothing there or elsewhere in the car.

While on patrol at approximately 2:45 a. m. that same morning, Officer Bauer arrested Gonzalez for a traffic violation. Gonzalez's wrists were handcuffed behind his back, a pat-down search for weapons was performed, and Gonzalez was placed on the back seat of the patrol car. Officer Bauer noticed Gonzalez fidgeting on the back seat, moving from side to side and up and down. Gonzalez twice ignored orders to stop this activity. However, Officer Bauer testified that the fidgeting did not, at the time, arouse his suspicion.

Bauer then drove to the Miami Beach Police Station and went inside to make copies of his report. While the officer was inside the station, Gonzalez was alone in the patrol car. During this time Officer Neumann kept Gonzalez under surveillance from another patrol car, parked immediately behind Bauer's vehicle.

Next, Bauer drove to the Dade County Justice Building where at around 3:45 a. m. he deposited Gonzalez. Bauer then resumed routine patrolling.

---

* Circuit Judge of the Sixth Circuit, sitting by designation.

1. 18 U.S.C. § 472 (1976):
   Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

Near the end of his shift at approximately 7:20 a. m., Bauer returned to the Police Station where he and two other officers conducted a standard search of his patrol car. They discovered two $50 bills and five $20 bills in the back seat, between the seat cushion and the back cushion, right where Gonzalez had been sitting. Because the crumpled notes did not appear to be regular currency, Bauer called the Secret Service, which identified them to be counterfeit. It was stipulated at trial that the notes were counterfeit.

In the meantime, Gonzalez had posted bail and had been released. At approximately 10:30 Bauer arrested Gonzalez on a charge of violating the currency laws.

At trial, Bauer testified that during his entire shift no one besides Gonzalez had been on the back seat of the patrol car; in fact, no one had sat on the back seat during the preceding shift. Bauer further stated that although he had left his vehicle unattended for short periods during his shift, the back doors had always been locked or another officer had always watched the patrol car.

Gonzalez, challenging the sufficiency of the evidence, moved for acquittal at the end of the government's case. He also moved for acquittal, or in the alternative for a new trial, after the jury had returned its verdict.

▆ Here, the standard of review is whether, based on the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Caro*, 569 F.2d 411, 416 (5th Cir. 1978). As we have said:

> [I]f the trial or appellate court is satisfied that the jury could not reasonably conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt then the trial court, or on appeal, this Court must hold that "the jury must necessarily have had a reasonable doubt as to the inconsistency".

*United States v. Haggins*, 545 F.2d 1009, 1012 (5th Cir. 1977), quoting *United States v. Nazien*, 504 F.2d 394, 395 (5th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1358, 43 L.Ed.2d 443 (1975).

▆ This standard accords great weight to the jury verdict but it also requires the government to meet its burden of proof. When the evidence is such that a reasonably minded jury must have a reasonable doubt as to the existence of any element of the crime, a motion for acquittal must be granted, *United States v. Pinner*, 561 F.2d 1203, 1207 (5th Cir. 1977). Applying this standard we consider the evidence in the light most favorable to the government, resolving reasonable inferences and credibility choices in favor of the verdict, *United States v. Henderson*, 588 F.2d 157, 161 (5th Cir. 1979); however, the government must prove every element of the crime beyond a reasonable doubt. *United States v. Barrera*, 547 F.2d 1250, 1255 (5th Cir. 1977). This is a circumstantial evidence case but the test is the same no matter whether the evidence is direct or circumstantial. *United States v. Bright*, 550 F.2d 240, 242 (5th Cir. 1977).

In this case, to prove a violation of 18 U.S.C. § 472, the government had to show (1) that the defendant passed or possessed counterfeit money and (2) that he did so with the intent to defraud.

▆ From the evidence, as above recounted, there could be no reasonable doubt that Gonzalez possessed the counterfeit notes. No one sat on the back seat during the preceding shift. At the beginning of his shift Officer Bauer searched the car and found nothing. During Officer Bauer's shift no one other than Gonzalez sat on the back seat, and the patrol car was always occupied, locked, or under surveillance by another officer. At the end of Officer Bauer's shift, the counterfeit notes were found behind the back seat cushion exactly where Gonzalez had sat.

A reasonably minded jury could find beyond a reasonable doubt and to the exclusion of any other reasonable hypothesis that the notes had not been in the patrol car at the beginning of Officer Bauer's shift, that Gonzalez had possessed the notes, and that he had discarded them by removing them from his back pocket and stuffing them

where they were later found, thus explaining Gonzalez's persistent squirming.

The more difficult question is whether the evidence was sufficient to show that Gonzalez possessed the notes with the intent to defraud, that is, the defendant knew the notes were counterfeit. Possession or passing, standing alone, is not sufficient to establish the necessary knowledge. *United States v. Haggins*, 545 F.2d 1009, 1013 (5th Cir. 1977).

We recently had occasion to conduct an extensive survey of Fifth Circuit jurisprudence on this subject, so we need not repeat it here. See *United States v. Slone*, 601 F.2d 800, 803 (5th Cir. 1979).

Suffice it to say, if the evidence was sufficient to justify a verdict that Gonzalez had, with much effort while handcuffed, stuffed the counterfeit currency behind the cushion, and we have just held that it was, then it was also sufficient to justify a corresponding finding that the defendant had attempted to abandon (conceal) the counterfeit currency while under arrest. See *Slone*, at 803, citing *United States v. King*, 326 F.2d 415 (6th Cir. 1964).

The Judgment of the District Court is AFFIRMED.