**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Darrell COMBS, and Steven Brown,
a/k/a Steve Newman,
Defendants-Appellants.**

**Nos. 81–5206, 81–5207.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1981.

Decided and Filed March 19, 1982.

Rehearing Denied April 29, 1982.

Wilbur M. Zevely, Florence, Ky., for defendants-appellants.

Patrick H. Molloy, U. S. Atty., James E. Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before KEITH, Circuit Judge, WEICK, Senior Circuit Judge, and ALLEN,* District Judge.

* The Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky sitting by designation.

1. The essential elements of the statute, insofar as they pertain to this case are: 1. actual or

ALLEN, District Judge.

The appellants, Darrell Combs and Steven Brown, also known as Steven Newman, appeal their convictions on one count of an indictment charging them with violation of 18 U.S.C. Sec. 472 [1]—possession of counterfeit money with intent to defraud the United States. They contend that they had standing to challenge the search of the van in which the counterfeit money was found. They also contest the validity of the search yielding the money. Finally, they argue that the trial court erroneously submitted the case to the jury on insufficient evidence. Since we affirm the district court's decision as to the second and third grounds, we need not reach the interesting question presented by the first.

The evidence, viewed as it must be in the light most favorable to the appellee, establishes the following facts: Kentucky police received word that persons fitting the appellants' description and driving a blue van had twice tried, once successfully, to exchange legitimate bills of small denomination for several $100 bills. The police stopped a blue van, in which were the appellants and one J. C. Adams, three days after the first such attempt. They questioned the occupants, who denied knowing each other and denied knowing who owned the van. One of the officers saw a purse in the van and obtained consent to search it. He saw that the purse contained Quaaludes and a clip of ammunition. The occupants were ordered from the van, and an officer entered it and peered down into an open sack in the rear part. The sack contained $17,480 in counterfeit twenty-dollar bills. The appellants were arrested, though Adams escaped.

The appellants argue that on the facts presented at trial a jury could not reasonably find them guilty. They contend first that the evidence is insufficient to show a knowing possession, and that the *mens rea*

constructive possession, 2. of bills known to be counterfeit, 3. with general intent to defraud unknown parties. See *United States v. Pitts*, 508 F.2d 1237 (8th Cir. 1974), *cert. denied* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975).

requisite for an intent to defraud is absent. *United States v. Slone*, 601 F.2d 800 (5th Cir. 1979).

■ Much of the argument that appellants make relative to the evidence was on the theory that appellants had borrowed the van only forty-five minutes before they were stopped. The implication is that this is too brief a period of possession to support a reasonable inference of knowledge of the contents of the van. However, there was also evidence adduced at trial showing that appellants were in possession of the same van three days before the arrest took place, and there was no evidence of interrupted possession. A jury could have chosen to believe the evidence indicating possession of the van for three days and could properly have concluded that appellants must have had knowledge of the contents of the van. It is true that the United States relied on the evidence suggesting a forty-five minute possession in its argument that the appellants had no standing to challenge the search, but this does not prevent the trial court, the jury, or this court from considering the evidence indicating possession of the van for at least three days. Also, of course, the jury was entitled to consider the evidence that the appellants told the police they did not know who owned the van and claimed not to know each other or Mr. Adams, and also the testimony of the police that Brown told them that he borrowed the van but didn't know from whom. This evidence is sufficient to support a conclusion of knowing possession of the sack of money.

■ Appellants' primary argument is that the evidence was insufficient to establish their knowledge that this money was counterfeit, the second element of a violation of 18 U.S.C. Sec. 472; *United States v. Slone, supra*, at pp. 804–05; *United States v. Haggins*, 545 F.2d 1009, 1013 (5th Cir. 1977); *United States v. Jiminez-Serrato*, 451 F.2d 523, 525 (5th Cir. 1971); *United States v. Bean*, 443 F.2d 17 (5th Cir. 1971); *Paz v. United States*, 387 F.2d 428, 430 (5th Cir. 1967). Further, without knowledge that the bills are counterfeit, the intent to defraud may be absent. *Cf. United States v. Salinas-Salinas*, 555 F.2d 470 (5th Cir. 1977).

These cases differ substantially from the present cases. In all of them the counterfeit money was in a form and place that would not give any reasonable suspicion of irregularity. In *Slone, supra*, the most similar to this case, the money was in 100 fifty-dollar bills in the defendant's wife's purse. In *Jiminez-Serrato, supra*, a small amount of counterfeit money was contained in a sealed envelope, and the court held the evidence insufficient to show that the defendant had knowledge of its contents. In *Bean, supra*, the evidence showed only that the defendant took two twenty-dollar bills from a billfold. In *Haggins, supra*, the defendant had three twenty-dollar bills in a billfold. *Paz, supra*, like *Bean, supra*, showed the presence of two twenties in the defendant's billfold.

The present case is qualitatively different. Here the defendants possessed 874 twenty-dollar bills in a paper sack in the back of a van. The jury may infer from proper circumstances that the defendants had knowledge that the money in their possession was counterfeit. *Paz, supra*.

■ This Court held in *Zottarelli v. United States*, 20 F.2d 795 (6th Cir. 1927) that a jury might reasonably infer from possession of a large number of war savings stamps knowledge of their counterfeit nature. Though the quantities in *Zottarelli* were apparently greater, the difference does not distinguish that case from this. Likewise, in the case at bar, a jury could logically infer knowledge of the counterfeit nature of the bills from the fact that the bills were in their possession, were in large quantities, and were unusually packaged.

This Circuit's standard for a verdict of guilt based on circumstantial evidence was repeated recently in *United States v. Campion*, 560 F.2d 751 (6th Cir. 1977). "Although circumstantial evidence alone may sustain a guilty verdict, even if it fails to exclude all reasonable hypotheses consistent with a theory of innocence ... where the

jury is called upon to choose between 'reasonable probabilities' of equal weight, one innocent and the other criminal, a conviction cannot stand." *Id.* at pp. 753–54. In the present case we cannot say that all probabilities are of "equal weight." The jury had substantial evidence on which to find facts that would lead them to only one reasonable conclusion.

This holding obviates the appellant's arguments that various other aspects of this case do not justify its submission to the jury. Since the case on the above facts alone was sufficient to reach the jury, we need not discuss other contentions of its insufficiency. We need not reach the interesting question[2] whether the appellants had in a van borrowed, as some evidence showed, forty-five minutes before standing to challenge its search since we hold that the search of the van comported with the strictures of the Fourth Amendment.

The appellants concede that the police had probable cause to stop the van on December 11th, three days after appellant Brown's visit to People's Liberty Bank. They concede that the officer searched the purse by consent. They appear even to concede that the search was acceptable under the standards of the United States Constitution, particularly the Fourth Amendment. Instead they would invoke Kentucky's Constitution, Section 10, which they argue prohibited the search of the van.

The Government argues that since the sack was open and the money visible from inside the van, the occupants had no legitimate expectation of privacy and that a warrantless search was justified. They further argue that because the crime with which the appellants were charged is Federal, the Kentucky Constitution is inapplicable.

The Government's contention that the appellants had no legitimate expectation of privacy in the sack is not well taken. It is not the sack or its contents in which the appellants claim a privacy interest. Indeed, they contend that they had no knowledge of the sack or its contents. Rather they claim a privacy interest in the van's interior. Whether they had this interest we need not explore—the officer was within the bounds delineated in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The United States Supreme Court there held lawful a warrantless automobile search for which the officers had probable cause. The ruling established an exception to the warrant requirement where police have probable cause to believe that an automobile, inherently mobile and affording a diminished expectation of privacy, contains articles properly subject to search. The *Chambers* court relied principally on the automobile's mobility.

"(T)he opportunity to search is fleeting since a car is readily movable. Where this is true . . . , if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Id.* at p. 51, 90 S.Ct. at p. 1981.

■ Since a van's mobility is no less than a car's, the same probable cause sufficient to justify an auto search will justify the search of a van. The question thus becomes whether the officers had probable cause to search the van.

■ The record shows that the officer who searched the van had evidence reasonably leading him to believe that the appellants had made actual and attempted exchanges of large amounts of money, that they denied knowing who owned the van, and that they denied knowing each other. When the officer instructed one of the appellants to leave the van, the appellant merely receded further into it. The officers

---

2. *See* the dissenting opinion of White, J., in *Rakas v. Illinois*, 439 U.S. 128, 167, 99 S.Ct. 421, 442, 58 L.Ed.2d 387 (1978). Speculating on what remained of standing to challenge a search, Justice White asked questions that we must leave unanswered: "What if the nonowner (of a vehicle) were driving with the owner's permission? Would nonowning drivers have more of an expectation of privacy than mere passengers?"

permissibly discovered drugs that gave no evidence of being prescribed, and an ammunition clip. On these facts the officer who made the search had probable cause to believe that a crime had been committed and that evidence thereof was within the van.

The appellants contend that *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) allows a state to impose on searches and seizures standards stricter than those of the Fourth Amendment. *Hass* and the cases it cites at p. 719, 95 S.Ct. at p. 1219, *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967) and *Sibron v. New York*, 392 U.S. 40, 60–61, 88 S.Ct. 1889, 1901–1902, 20 L.Ed.2d 917 (1968), do say in dicta that a state may impose on those who search or seize requirements more strict than those of the Fourth Amendment. Nor do we doubt their general applicability in state proceedings. Nevertheless, these cases applied the Fourth Amendment by way of the Fourteenth in cases of breach of state criminal codes.

 The present case concerns a Federal crime; states are not free to impose on Federal courts requirements more strict than those of the Federal laws or Constitution. "The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers. *Elkins v. United States*, 364 U.S. 206, [80 S.Ct. 1437, 4 L.Ed.2d 1669] (1960)." *Preston v. United States*, 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). The Government cites an impressive list of cases that accord with this holding, and we feel constrained to follow them. Since the search comports with Fourth Amendment requirements and since Federal law here applies, we hold that the search was valid.

We therefore affirm the decision of the district court.